FAULKNER, Justice.
Acromag-Viking, Inc. brought this action against Marketing of the Gulf, Inc. and its president and manager, Andrew D. Blal-ock, seeking to recover a debt owed to it by Marketing of the Gulf and seeking to impose personal liability upon Blalock on the basis of fraud. After an ore tenus hearing, the trial court entered judgments against both defendants. We affirm.
Andrew Blalock was president and manager of Marketing of the Gulf, Inc. (“Marketing”), which owned a clock showroom and retail store in Gautier, Mississippi. Marketing purchased its clocks on credit from the Viking Clock Company, Inc. Acromag-Viking, Inc. purchased substantially all of the assets of Viking Clock Company in May 1979, including the open account between Viking Clock and Marketing. Henry Patton, president of Acromag-Viking, contacted Blalock concerning payment terms of Marketing’s debt. When satisfactory terms could not be reached, Acromag-Viking sued Marketing for $29,-844.64 due on open account and sued Blal-ock personally as the corporation’s alter ego. Marketing then suspended all its payments to Acromag-Viking.
The case was originally tried non-jury and ore tenus on December 8, 1980. The trial court entered a judgment on April 30, 1981, only against Marketing, for $29,-844.64. Acromag-Viking filed a Rule 60(b), A.R.Civ.P., motion to vacate on the grounds that the trial judge was on the board of directors of a magazine which employed Blalock as a sales representative. Acromag-Viking appealed the original judgment and the denial of the Rule 60(b) motion to this Court. We reversed and remanded the case for further proceedings. See Acromag-Viking, Inc. v. Blalock, 420 So.2d 60 (Ala.1982).
In January 1981, approximately six weeks after the “first trial, Marketing’s Gautier showroom burned down. Marketing received $23,500 in fire insurance, with which it repaid a $10,000 Small Business Administration loan and a $500 loan from Blalock’s wife. In addition, Blalock used $5,400 of the insurance money to pay himself a salary. The remainder of the money was transferred to an account in Florida, where, Blalock testified, it was used to pay other creditors. Blalock also received $6,500 or $7,000 in business interruption insurance, from which he paid himself a salary of $1,500. Blalock testified that he disbursed this money to creditors through cashier’s checks, of which he kept no copies.
Acromag-Viking amended its complaint to allege that Blalock and Marketing entered into a plan whereby Blalock would convert the assets of Marketing to his own use in an effort to hinder, delay, or defraud the creditors of Marketing and that Blalock had done so. At the second trial, the court held that Blalock received from Marketing corporate assets in the amount of $12,400 in an effort to hinder or delay creditors of the corporation. The judgments entered were for $35,638.94 against Marketing and for $13,452 against Blalock. Blalock appeals.
Blalock’s sole contention is that Alabama Code 1975 § 10-2-201, the “trust fund doctrine,” which was still in effect when the debt arose, provides the only relief for Acromag-Viking. Section 10-2-201 (now repealed) reads:
*93 “§ 10-2-201. Assets of insolvent corporations. “The assets of insolvent corporations constitute a trust fund for the payment of the creditors of such corporations which may be marshaled and administered in courts having jurisdiction in equitable matters in this state. (Acts 1959, No. 414, p. 1055, § 75.)”
Blalock cites View-All, Inc. v. United Parcel Service, 435 So.2d 1198 (Ala.1983), in support of his view that a marshaling of assets is Acromag-Viking’s only relief. In View-All, creditors sued the directors to force them to repay amounts they had received from the insolvent corporation. This Court held that the remedy was a marshaling of assets for pro rata administration to all creditors. A clear reading of View-All, however, shows that this was the plaintiffs’ only relief because an action for fraud would not lie, since the plaintiffs failed to show the director’s debts which were satisfied were not bona fide. Thus, in View-All, marshaling and administration of assets was an alternative to a fraudulent conveyance action. In the instant case, therefore, Acromag-Viking could choose to pursue a fraud action instead of a marshaling of assets.
Furthermore, Blalock raises this issue for the first time on appeal. This court will not review a case on a theory different from that on which it was tried below. Bailey v. City of Mobile, 292 Ala. 436, 296 So.2d 149 (1974); Kent v. Sims, 460 So.2d 144 (Ala.1984). Therefore, we affirm.
AFFIRMED.
ALMON, EMBRY and ADAMS, JJ., concur.
TORBERT, C.J., concurs in the result.