516 So.2d 606 (1987)
Ex parte Peter G.T. BALOGUN, Sr.
(Re Ex parte Peter G.T. Balogun, Sr.
(Re Peter G.T. BALOGUN, Sr.
v.
Catherine BALOGUN)).
86-593.
Supreme Court of Alabama.
October 2, 1987.
*607 George L. Beck, Jr., Montgomery, for petitioner.
Thomas L. Rountree, Auburn, for intervenors.
PER CURIAM.
Petitioner, Peter G.T. Balogun, Sr., petitioned for a writ of certiorari to the Court of Civil Appeals, which had 1) denied a writ of mandamus directed to the Honorable Dale Segrest, Circuit Court, Macon County, Alabama, compelling him to recuse himself and 2) affirmed the trial court decision permitting Tuskegee Newspaper, Inc., and Paul R. Davis to intervene in petitioner's divorce proceeding to obtain certain documents pursuant to a claimed First Amendment right. We reverse the judgment of the Court of Civil Appeals affirming Judge Segrest's refusal to recuse himself and affirming Judge Segrest's order allowing the intervention of Tuskegee Newspaper, Inc., and Paul R. Davis; we remand to the Court of Civil Appeals with instructions for that court to grant the writ of mandamus compelling recusal and to remand to the circuit court for proceedings consistent with this opinion.

FACTS
The facts are undisputed. Petitioner filed for divorce in the Circuit Court of *608 Macon County, Alabama. During the first days of the divorce proceeding, four letters (hereinafter the "dog track letters"), as well as photographs and other documents, allegedly involving the petitioner, the Macon County Dog Track, and unethical or criminal conduct, were marked for identification as Exhibits 32 through 35. Exhibit 32 was admitted into evidence, but the remaining exhibits were not admitted. The court then recessed.
During the recess, the parties reached a settlement. When the court reconvened, the settlement was read into the record. Upon reaching a settlement, petitioner requested that the court return the exhibits, which had been stolen from petitioner in July 1986. Judge Segrest refused to return the exhibits and ordered that they be locked in the clerk's safe indefinitely. On that issue, Judge Segrest stated:
"Well, let me tell you quite frankly, that's not going to become bedroom material for anybody to have to look at or anything like that. It's going to be put in a safe...."
In response to these actions, petitioner filed a complaint against Judge Segrest with the Alabama Judicial Inquiry Commission on September 8, 1986. Upon learning that other parties had gained access to the letters, petitioner filed a motion to have the trial judge return all the exhibits. A hearing on the motion was not set until December 5, 1986. After the motion was filed, Judge Segrest informed petitioner that he was the party who had given copies of the letters to various law enforcement agencies.
Petitioner alleged that Judge Segrest indicated bias by turning over the documents to the law enforcement agencies. On October 31, 1986, petitioner orally moved for Judge Segrest to recuse himself. Judge Segrest took the motion under advisement and requested the Judicial Inquiry Commission's opinion on whether he should recuse himself from further proceedings in petitioner's divorce case.
On November 14, 1986, Tuskegee Newspaper, Inc., and Paul R. Davis filed a motion to intervene in the divorce case in order to gain access to the dog track letters. On November 17, Judge Segrest granted the intervenors' motion and set a hearing on the merits for November 21, 1986. On the same day, in writing, petitioner reasserted his motion for Judge Segrest to recuse himself.
On November 21, 1986, the Judicial Inquiry Commission advised Judge Segrest that
"... the mere fact of the report [disclosure of letters to law enforcement] would not affect the court's appearance of impartiality...."
Thereafter, Judge Segrest denied petitioner's motion for recusal.
Petitioner subsequently sought a writ of mandamus from the Court of Civil Appeals. That court denied it, without an opinion. Petitioner's motion for rehearing and adoption of facts under Rule 39(k), A.R.App.P., was also denied.
Petitioner then sought from this Court a writ of certiorari and filed here a motion for stay pending issuance of the writ. Both the motion to stay and the writ were granted by this Court. At this time, the parties have settled the divorce action, but the disposition of the dog track letters is still pending.
The issues here are as follows:
1. Whether a writ of mandamus should be issued, compelling Judge Segrest to recuse himself from further proceedings in this matter.
2. Whether the Court of Civil Appeals erred in affirming the trial court's decision allowing Tuskegee Newspaper, Inc., and Paul R. Davis to intervene in order to obtain access to the dog track letters.

I. Mandamus

This Court has long held that mandamus, not appeal, is the proper remedy if a judge refuses to recuse himself. Crook v. Newberg & Son, 124 Ala. 479, 484, 27 So. 432 (1899), citing Ex Parte State Bar Ass'n, 92 Ala. 113, 8 So. 768 (1890). See Fulton v. Longshore, 156 Ala. 611, 46 So. 989 (1908).
At early common law, and prior to the adoption of the Alabama Canons of Judicial *609 Ethics, mandamus was granted to require a judge to recuse himself only if the judge had a personal or pecuniary interest, Fulton, supra, or if the judge's personal rights were at stake. Fulton, 156 Ala. at 614, 46 So. at 990, citing Ex parte State Bar Ass'n, supra.
The adoption of the Canons of Judicial Ethics, which have the force of law, provided a new standard. See Wallace v. Wallace, 352 So.2d 1376 (Ala.Civ.App. 1977).
Canon 2(A) states:
A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
Given the concept of promoting public confidence in the system, Canon 3(C)(1) states that "[a] judge should disqualify himself in a proceeding in which ... his impartiality might reasonably be questioned" by members of the public, a party, or counsel. See Wallace, supra; Acromag-Viking v. Blalock, 420 So.2d 60 (Ala.1982); affirmed on other grounds, 474 So.2d 91 (Ala.1985). Nonetheless, recusal is not required based on a "mere accusation of bias unsupported by substantial fact. Each case must stand on its own." Wallace, supra at 1379; see Acromag-Viking, supra; Ford v. Ford, 412 So.2d 789 (Ala.Civ.App.1982); Miller v. Miller, 385 So.2d 54 (Ala.Civ.App.), cert. denied, 385 So.2d 56 (Ala.1980). The presumption is that the judge is not biased if his decisions are supported by clear and convincing evidence. Matter of Sheffield, 465 So.2d 350 (Ala.1984), citing Matter of Samford, 352 So.2d 1126, 1129 (Ala.1977). "For the law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea." Fulton, 156 Ala. at 613, 46 So. at 990.
The facts of this case are simple and undisputed. Though this is a divorce action, the crucial question revolves around those dog track letters that were marked for identification and the one letter admitted into evidence. Judge Segrest refused to return the exhibits upon settlement of the case and promised to lock them in a safe. What he admitted to actually doing was giving copies of the exhibits to law enforcement agencies. Thereafter, he set a hearing on petitioner's motion to return the documents, but set it for three months after the motion was made. In the meantime, he granted the respondents' motion to intervene, within three days of the date they made their motion and while the petitioner's motion to return the documents was still pending.
Before ruling on petitioner's motion to recuse, Judge Segrest asked the Judicial Inquiry Commission to give an advisory opinion. The Commission determined that Judge Segrest's conduct in releasing the dog track letters to law enforcement agencies did not, standing alone, indicate any bias requiring recusal. Judge Segrest relied on this advisory opinion in denying petitioner's motion.
Rule 17, Rules of Procedure of the Judicial Inquiry Commission, provides that the Judicial Inquiry Commission may issue advisory opinions as to "whether certain specified action contemplated or proposed to be taken by [a judge] may constitute a violation of the Canons of Judicial Ethics." The opinions are rendered for the benefit of a judge, and are admissible on behalf of a judge should he act consistent with the opinion and then have disciplinary proceedings brought against him for that conduct.
Similar to an advisory opinion by this Court pursuant to § 12-2-10, Code of Alabama (1975), the Commission's advisory opinions are not binding and do not affect a party's rights or remedies. See Alabama Education Ass'n v. James, 373 So.2d 1076 (Ala.1979); Opinion of the Justices No. 269, 280 Ala. 692, 198 So.2d 269 (1967). While this Court will consider the opinion of the Commission, we are not bound by it.
One factor apparently not considered by the Commission, but which we conclude is crucial, is the fact that an issue in this case is the disposition of the dog track letters, and, on at least two prior *610 occasions Judge Segrest has recused himself on matters involving the dog track. See Alabama Leisure Enterprises, Inc. v. Macon County Racing Comm'n, [Macon County CV 83-112], and Macon Development Corp. v. Macon County Racing Comm'n, [Macon County CV 83-123]. Judge Segrest himself stated in strong language why he recused:
Long prior to the time that I became a circuit judge, I took a public position in opposition to legalized dog racing under the auspices of a local commission. The political issue of dog racing was a heated issue in a campaign for the State Senate several years prior to my election as circuit judge. Additionally, in connection with a referendum which was conducted several years ago in which the dog track measure was defeated at the polls, I was consulted by private interests and had tentatively agreed to represent parties who questioned the legality of a local law which possibly contravenes a State law of general application.
Because of my prior involvement with the issue and my opposition to legalized dog racing, which is publicly known, I am fearful that one or the other, or perhaps all of the parties to the litigation, might feel that my prior involvement and opposition to dog racing would influence my decision, one way or the other, in the present matter.
It is of paramount importance that the absolute integrity and the absolute appearance of integrity of the court system be maintained at all times. There are many other circuit judges in the state who have never had prior involvement, one way or the other, with the issue of dog racing. Therefore, I respectfully decline further involvement in this matter in deference to some other judge, in the interest of preserving the absolute appearance of impartiality of all court proceedings in this circuit court.
As previously stated, a judge should recuse himself when his impartiality may be questioned. Alabama Canons of Judicial Ethics, Canon 3(C). We agree with the Judicial Inquiry Commission that merely turning over the documents to the law enforcement agencies was insufficient to meet the burden on petitioner to prove "substantial bias." However, it is unnecessary for this Court to find actual bias by Judge Segrest. His own refusal to hear two prior cases involving the Macon County dog track due to his prior involvement in both the political and legal aspects of the issue, as well as his known public position on the issue, are sufficient. We simply conclude that the facts are such that a person of ordinary prudence could reasonably question Judge Segrest's impartiality. See Bryars v. Bryars, 485 So.2d 1187 (Ala. Civ.App.1986). Based on Judge Segrest's past conduct of recusing himself and his own words, we conclude that petitioner's burden of proof is met.
For the foregoing reasons, the writ of mandamus compelling Judge Segrest to recuse himself from further proceedings involving this matter is due to be granted.

II. Intervention

The second issue involves the Court of Civil Appeals' decision affirming the trial court's order that permitted respondents Tuskegee Newspaper, Inc. and Paul R. Davis, (hereinafter "the Tuskegee News and Davis," or "respondents") to intervene in petitioner's divorce proceeding on the grounds that they have a "direct interest" in the documents to be inspected and are entitled to intervene pursuant to Rule 24, A.R.Civ.P. For the following reasons, we reverse.
Alleging a First Amendment right to obtain access to public records and documents that may involve improper or criminal conduct by various public officials, Tuskegee News and Davis claim a right to intervene to determine the disposition of the dog track letters.
Generally, trials are open to the public. However, public access must be balanced with the effect on the parties. Newman v. Graddick, 696 F.2d 796 (11th Cir.1983). Only in special circumstances, or where justice requires, are proceedings limited or completely closed to the public. Newman, supra. Due to the personal nature of divorce proceedings, this Court has *611 previously determined that the press's right to obtain access to public records does not extend to records in a divorce proceeding. Holcombe v. State ex rel. Chandler, 240 Ala. 590, 200 So. 739 (1941); see Nixon v. Warner Communications, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).[1] Furthermore, with good cause,[2] the trial judge has the discretion to close the proceeding and/or the records to the public and the press to protect the rights of the parties.
Rule 24, A.R.Civ.P., permits both intervention as of right and permissive intervention:
(a) Intervention of Right. Upon timely application, anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action....
(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. ... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
The news media generally have standing to intervene in a criminal proceeding to object to a motion to "seal" court records that would otherwise be a matter of public information. See United States v. Cianfrani, 573 F.2d 835 (3rd Cir.1978). In determining whether the news media have a right to intervene, courts should be flexible and should focus on the circumstances of each case. State ex rel. Wilson v. Wilson, 475 So.2d 194 (Ala.Civ.App.1985). However, because this is a divorce proceeding and the press's access to the records of a divorce proceeding is generally not permitted, the respondents have an especially difficult burden. See Warner Communications, supra; Holcombe, supra; Caswell, supra.
The standard for intervention, as relied on by Tuskegee News and Davis, is that an intervenor must have a "direct, substantial, and legally protectable interest in the proceeding." State ex rel. Wilson, supra. Though the Tuskegee News and Davis admit that the news media normally have no standing to intervene in a divorce action, they contend that this case is unique. Respondents argue that because they allege that the dog track letters potentially involve evidence of improper or criminal conduct by members of the public in positions of trust, they have a right to intervene to obtain access to the documents for the public good.
The right of the Tuskegee News and Davis to intervene in this action primarily rests on their right to inspect the documents.
There is little authority under Alabama law on this issue. Both petitioner and respondents cite Holcombe, supra, as authority for their position. In Holcombe, supra, a newspaper publisher petitioned for a writ of mandamus compelling a public official to allow him to inspect records containing the name, address, sex, race, and identifying marks of each person arrested and brought to the county jail. The requested records were required by law to be maintained and available for public inspection during office hours. Alabama Code 1923, § 10198. However, no information regarding indictment, *612 arraignment, and so forth, was permitted to be released.
Due to a newly authorized system of record keeping, by the time Holcombe arose these records contained both the general arrest information and other confidential information that was not permitted to be released. For these reasons, the public official would not permit the publisher to see the records. The publisher sought a writ of mandamus compelling the public official to release the information required pursuant to the Code. Holcombe, supra.
The Court issued the writ, but only as to the records that were required by law to be kept for public inspection. The Court held that the public generally has a right of reasonable inspection of public records required by law to be kept, except where inspection is merely out of curiosity or speculation or where it unduly interferes with the public official's ability to perform his duties. Holcombe, 240 Ala. at 597, 200 So. at 746.
The Court further held that newspapers have an interest justifying their access to public records that are required by law to be kept, for the purpose of selling news. Holcombe, supra. However, this right to inspect public records does not extend to the records of a divorce action. Holcombe, 240 Ala. at 598, 200 So. at 747.
In general, Holcombe does not apply to the facts of the instant case. The records to be inspected by the newspaper publisher in Holcombe were required by law to be recorded and maintained for public inspection. In this case, there is clearly no law requiring personal letters of non-government officials to be maintained for public inspection. At best, the Tuskegee News and Davis have a right to inspect letters that have been made a part of the public record. But it is clear that "[t]he press has no right of access to exhibits produced under subpoena and not yet admitted into evidence, hence not yet in the public domain." See United States v. Gurney, 558 F.2d 1202, 1210 (5th Cir.1977) (emphasis added). In this case, the dog track letters numbered as Exhibits 33-35 have not been admitted into evidence and they are not public records. By denying access to these non-public records, this Court is neither prohibiting all access to the information contained therein, nor violating respondents' First Amendment rights.
As for the dog track letter marked as Exhibit 32, which was admitted into evidence, we find no law requiring that all evidence admitted at trial become a public record. See Gurney, supra. In fact, a court has the power to curtail the right to inspect or copy records if it might interfere with the administration of justice. Newman, supra; Sanford v. Boston Herald-Traveler Corp., 318 Mass. 156, 61 N.E.2d 5 (1945). Since this is a divorce proceeding, we will not presume that evidence admitted at trial is a part of the public record. See Warner Communications, supra; Gurney, supra; Holcombe, supra. Respondents have failed to overcome that presumption.
Though there is little Alabama authority on this issue, the Tuskegee News and Davis further argue that federal law has liberally allowed the news media to intervene in judicial proceedings in order to protect their rights under the First Amendment to the United States Constitution. The First Amendment not only prohibits censorship, but prohibits government conduct that inhibits free and general discussion of public matters. See P.A.M. News v. Butz, 514 F.2d 272 (D.C.Cir.1975).
On that premise, the Tuskegee News and Davis argue that the trial court's conduct in taking possession of the documents and supposedly locking them in a safe constituted a "stifling" of information that should rightly be released to the public. We disagree. If a court is not required to open all hearings and release all records to the public, and certainly it need not open a divorce proceeding, then the trial judge's conduct did not "stifle" the respondents' First Amendment rights. See C. v. C., v. News Journal Co., 320 A.2d 717 (Del.1974).
Finally, the Tuskegee News and Davis contend that the media have standing to challenge a denial of access to documents in criminal cases if they can demonstrate *613 injury in fact and if the interest they seek to protect is within the protection of the First Amendment. United States v. Gurney, supra. Once again, the respondents have not proven injury in fact that would result from a refusal of this Court to allow them to intervene in the divorce proceeding.
Even if we relied on the authority cited to this Court by respondents Tuskegee News and Davis, we find no evidence to support their claim of a right to intervene in the divorce proceeding to determine the disposition of the dog track letters.
If there is no right to inspect, then there can be no right to intervene pursuant to Rule 24(a). Clearly, no statute or other law gives them the right to inspect documents that are not a part of a public record and that are a part of a divorce proceeding. We can conceive of no circumstances where the Tuskegee News and Davis would have an interest in the property or transaction that is the subject of the divorce action. Therefore, we find no basis for intervention as of right under Rule 24(a), A.R.Civ.P.
Even under the more discretionary rule of permissive intervention, Rule 24(b), A.R. Civ.P., we can find no basis for allowing intervention. Clearly no law permits conditional intervention, and, even under the authority cited to us by the respondents, we have no proof that they have a direct, substantial, or legally protectable interest in the divorce proceeding. State ex rel. Wilson, supra. Furthermore, there is no evidence that denying intervention in this case will cause injury in fact, will prevent access to the documents altogether, or will harm the public. Rule 24(b), A.R.Civ.P., states that the court should also consider the potential prejudice to the original parties before allowing intervention. In this case, not only could intervention substantially affect the rights of the parties in the divorce proceeding, but it could also affect petitioner's rights in any other criminal or civil actions involving the dog track letters.
It is well settled that in regard to obtaining access to public documents, a newspaper has a right equal to, but no greater than, that of the general public. In re Express-News Corp., 695 F.2d 807 (5th Cir. 1982). See C. v. C., v. News Journal Co., supra; Holcombe, supra. If this Court were to adopt the standard for intervention suggested by the respondents, conceivably every member of the news media and every citizen of Tuskegee should be allowed to intervene in the petitioner's divorce proceeding in order to gain the right to inspect documents that may or may not be introduced at trial. Certainly, that is not what the drafters contemplated when they wrote Rule 24.
Because the respondents have not overcome the presumption that records and documents in a divorce proceeding are private matters and not subject to intrusion by the press, see Warner Communications, supra; Newman, supra, Holcombe, supra; and Caswell, supra, we must hold that the Tuskegee News and Davis should not have been permitted to intervene in the divorce proceeding.
On the basis of the foregoing, we reverse the judgment of the Court of Civil Appeals and remand this case to that court for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and JONES, BEATTY and ADAMS, JJ., concur.
MADDOX, J., concurs specially.
MADDOX, Justice (concurring specially).
I concur in Part I of the majority opinion. I concur in the result reached in part II. I am not convinced that Holcombe is authority for the proposition that the trial judge may close every divorce trial, and that the record compiled in a divorce case is not a matter of public record.
I am of the general opinion that very few trials, and the records made of those trials, can be completely closed or made unavailable to the public, under reasonable terms and conditions. There may be some trials in which secret material is presented, and *614 some trials may be of such a nature that they can be closed, but those will be rare and far between. I have not gone to the record here to determine whether the documents sought by the media should have been provided to them; therefore, I concur only in the result reached in Part II of this case, because the Tuskegee News has not shown, in its certiorari proceeding, that it was entitled to view the documents in question.
NOTES
[1] The press's common-law right of access to hearings and evidence is not unlimited, Warner Communications, supra. In Warner, the Court cites divorce proceedings as an example of the type of hearing that can be closed to the public and press because of the "painful and sometimes disgusting details of divorce," Id., citing In Re Caswell, 18 R.I. 835, 836, 29 A. 259 (1893).
[2] See Katz v. Katz, 514 A.2d 1374, 356 Pa.Super. 461 (1986); English v. McCrary, 328 So.2d 257, 259-60 (Fla.App.1976). The mere desire of divorce litigants to hold a private divorce proceeding is insufficient justification to close a hearing to the public and the press. State ex rel. Gore Newspapers Co. v. Tyson, 313 So.2d 777 (Fla. App.1975). However, the welfare of a child is a sufficient reason to close divorce proceedings to the public and the press. Whitney v. Whitney, 164 Cal.App.2d 577, 330 P.2d 947, 951 (1958).