PER CURIAM.
 

 The State of Alabama filed this petition for a writ of mandamus directing Judge Robert Smith to set aside his rulings related to discovery in George Martin’s Rule 32, Ala.R.Crim.P., proceedings. In May 2000, Martin was convicted of murdering his wife, Hammoleketh Martin, for pecuniary gain, an offense defined as capital by § 13A-5-40(7), Ala.Code 1975. The jury recommended, by a vote of 8 to 4, that Martin be sentenced to life imprisonment without the possibility of parole. The circuit court sentenced Martin to death.
 
 [1]
 
 We affirmed his conviction and sentence on direct appeal.
 
 Martin v. State,
 
 931 So.2d 736 (Ala.Crim.App.2003). The Alabama Supreme Court reversed our judgment and ordered us to remand the case to the lower court for that court to consider the jury’s recommendation of life imprisonment without the possibility of parole as a mitigating circumstance.
 
 Ex paute Martin,
 
 931 So.2d 759 (Ala.2004). On return to remand, we affirmed the circuit court’s sentence of death.
 
 Martin v. State,
 
 931 So.2d 774 (Ala.Crim.App.2005). We issued the certificate of judgment on December 12, 2005.
 

 In May 2006, Martin filed a petition for postconviction relief pursuant to Rule 32 attacking his conviction and death sentence. In June 2006, Martin filed a motion for discovery of the prosecution’s files. Martin filed a second motion for discovery of the same materials in November 2006. In March 2007, Martin filed a motion for access to certain trial exhibits that were admitted at his capital-murder trial. The circuit court held a hearing on these motions in September 2007. On February 21, 2008, Judge Smith issued two orders granting both the motion for discovery and the motion for access. On February 28, 2008, the State filed this mandamus petition.
 
 [2]
 

 This case is correctly before this Court by way of a petition for a writ of mandamus. See
 
 Ex parte Land,
 
 775 So.2d 847 (Ala.2000).
 

 I.
 

 The State first argues that the circuit court abused it discretion in granting Martin’s motion for discovery of the prosecution’s files without first determining whether Martin had shown good cause for the disclosure of the files as required by the Alabama Supreme Court’s decision in
 
 Ex parte Land.
 
 The State contends that the claims for which the discovery was requested were procedurally barred; thus, it argues, Martin could not comply with the requirements of
 
 Ex parte Land,.
 

 The Alabama Supreme Court in
 
 Ex parte Land
 
 addressed discovery in post-conviction proceedings. The Court stated:
 

 “We agree with the Court of Criminal Appeals that ‘good cause’ is the appropriate standard by which to judge post-conviction discovery motions. In fact, other courts have adopted a similar ‘good-cause’ or ‘good-reason’ standard for the postconviction discovery process. See
 
 [State v.] Marshall,
 
 [148 N.J. 89, 690 A.2d 1, cert. denied, 522 U.S. 850 (1997) ];
 
 State v. Lewis,
 
 656 So.2d 1248 (Fla.1994);
 
 People ex rel. Daley v. Fitzgerald,
 
 123 Ill.2d 175, 121 Ill.Dec. 937,
 
 *1198
 
 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See
 
 Fitzgerald,
 
 supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d at 135. We also agree that New Jersey’s
 
 Marshall
 
 case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that ‘an evidentiary hearing must be held on a [petition for postconviction relief] which is meritorious on its face,
 
 ie.,
 
 one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief.’
 
 Ex parte Boatwright,
 
 471 So.2d 1257, 1258 (Ala.1985).
 

 “We emphasize that this holding— that postconviction discovery motions are to be judged by a good cause standard — does not automatically allow discovery under Rule 32, Ala.R.Crim.P., and that it does not expand the discovery procedures within Rule 32.4. Accord
 
 Lewis,
 
 supra, 656 So.2d at 1250, wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida’s rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner’s showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to ‘fish’ through official files and that it ⅛ not a device for investigating possible claims, but a means of vindicating actual claims.’
 
 People v. Gonzalez,
 
 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990),
 
 cert. denied,
 
 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf.
 
 Porter v. Wainwright,
 
 805 F.2d 930, 933 (11th Cir.1986) (‘a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief),
 
 cert. de
 
 nied, 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), AIa.R.Crim.P., which states:
 

 “ ‘The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.’ ”
 

 775 So.2d at 852-53.
 

 This Court has held that a petitioner is not entitled to discovery in a Rule 32 proceeding if the discovery relates to issues that are procedurally barred. In
 
 State v. Turner,
 
 976 So.2d 508 (Ala.Crim.App.2007), we stated:
 
 *1199
 
 derlying claims for which the discovery is sought to substantiate. The Alabama Supreme Court in
 
 Land
 
 stated:
 

 
 *1198
 
 “The State initially asserts that the circuit court erred in failing to consider the merits of the issues the requested discovery was to support. The above cases clearly show that we must evaluate the merits of the underlying issues to determine whether the petitioner has established good cause for the discovery. As we said in
 
 State v. Stallworth,
 
 941 So.2d 327, 331 (Ala.Crim.App.2006):
 

 “ ‘The Alabama Supreme Court in
 
 Land
 
 noted that the main emphasis in determining whether good cause is shown is a determination of the merits and the procedural posture of the un-
 

 
 *1199
 
 “ ‘ “[W]e must determine whether Land presented the trial court with good cause for ordering the requested discovery. To do that, we must examine Land’s basis for the relief requested in his postconviction petition and determine whether his claims are facially meritorious. Only after making that examination and determination can we determine whether Land has shown good cause.”
 

 ‘“775 So.2d at 858. In
 
 [Ex
 
 parte]
 
 Hooks,
 
 [822 So.2d 476 (Ala.Crim.App. 2000),] we stated:
 

 “‘“[A] claim that is procedurally barred ... in a postconviction petition clearly is not one that entitles a petitioner to relief. If a postconviction claim does not entitle the petitioner to relief, then the petitioner has failed to establish good cause for the discovery of materials related to that claim. See
 
 Land.”
 

 “ ‘822 So.2d at 481.’ ”
 

 976 So.2d at 513.
 

 Also, in
 
 Jackson v. State,
 
 910 So.2d 797 (AIa.Crim.App.2005), we stated:
 

 “Though Alabama has had little opportunity to define what constitutes ‘good cause,’ in
 
 Ex parte Mack,
 
 894 So.2d 764, 768 (Ala.Crim.App.2003), we quoted with approval an Illinois case the Alabama Supreme Court relied on in
 
 Land
 
 —People
 
 v. Johnson,
 
 205 Ill.2d 381, 275 Ill.Dec. 820, 793 N.E.2d 591 (2002):
 

 “ ‘ “A trial court has inherent discretionary authority to order discovery in post-conviction proceedings. See
 
 People ex rel. Daley v. Fitzgerald,
 
 123 Ill.2d 175, 183, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988);
 
 People v. Rose,
 
 48 Ill.2d 300, 302, 268 N.E.2d 700 (1971). A court must exercise this authority with caution, however, because a defendant may attempt to divert attention away from constitutional issues which escaped earlier review by requesting discovery ....
 
 Accordingly, the trial court should allow discovery only if the defendant has shown ‘good cause,’ considering the issues presented in the petition, the scope of the requested discovery, the length of time between the conviction and the post-conviction proceeding, the burden of discovery on the State and on any witnesses, and the availability of the evidence through other sources. Daley,
 
 123 Ill.2d at 183-84, 121 Ill.Dec. 937, 526 N.E.2d 131; see
 
 People v. Fair,
 
 193 Ill.2d 256, 264-65, 250 Ill.Dec. 284, 738 N.E.2d 500 (2000). We will reverse a trial court’s denial of a post-conviction discovery request only for an abuse of discretion.
 
 Fair,
 
 193 Ill.2d at 265, 250 Ill. Dec. 284, 738 N.E.2d 500. A trial court does not abuse its discretion in denying a discovery request which ranges beyond the limited scope of a post-conviction proceeding and amounts to a ‘fishing expedition.’ ” ’
 

 “894 So.2d at 768-69.”
 

 910 So.2d at 801-02.
 

 In Martin’s second motion for discovery he asserted that he was entitled to discover the prosecution’s
 
 [3]
 
 files because, he ar
 
 *1200
 
 gued, he asserted in his Rule 32 petition that the State had violated
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose exculpatory evidence. Martin’s motion listed 26 items that he asserted were not disclosed to him. The items range from photographs of the crime scene to allegations that the State failed to disclose the identity of potential exculpatory witnesses. Martin’s motion also requested that the Rule 32 court order the following agencies to comply with discovery:
 

 “The Mobile County District Attorney’s Office, the Alabama Attorney General’s Office, the Mobile Police Department, the Mobile Fire Department, the Mobile County Sheriffs Office, the Mobile County Coroner, Alabama Bureau of Investigations, the Alabama Department of Forensic Sciences, the Alabama Department of Public Safety, the Federal Bureau of Investigation and the Mobile County Circuit Courts, including (a) all present and former agents, officers, investigators, consultants, employees, and staff of these organizations; (b) any other person or entity acting on behalf of any of these organizations or on whose behalf such person or entity has acted; (c) any other person or entity otherwise subject to the control of any of these wherever such documents may be located....”
 
 [4]
 

 At a hearing held in September 2007 the State argued that the claims that the discovery concerned, the
 
 Brady
 
 claims, were procedurally barred; thus, Martin could establish no good cause for discovery related to those claims. The State further argued that some of Martin’s
 
 Brady
 
 claims were also disputed by the record because the record showed that trial counsel was aware of certain items that Martin asserts were not disclosed. These items, the State asserts, were introduced at trial. The circuit court agreed with the State’s argument that some of the claims were procedurally barred or meritless.
 

 However, in February 2008, Judge Smith granted the discovery motion and stated the following:
 

 “Petitioner George Martin’s motion for discovery of prosecution files, records, and information necessary to a fair Rule 32 evidentiary hearing having been presented, and after due consideration, is hereby granted. It. is ordered that the State shall provide petitioner George Martin access to review and copy the prosecution files as set forth in the motion.”
 

 Also, the exhibits filed with the mandamus petition and answer show that Martin filed an amended Rule 32 petition almost one year after filing his second discovery motion. There is no indication that a new discovery motion was filed after the amended Rule 32 petition was filed.
 

 After reviewing the exhibits filed with this petition and answer we agree with the State that it appears that Judge Smith failed to consider the merits or the procedural posture of the issues for which the discovery was requested. Such an analy
 
 *1201
 
 sis is critical to determine whether the petitioner has shown good cause. See
 
 State v. Turner,
 
 supra. Accordingly, the State is due relief on this claim.
 

 II.
 

 The State next argues that the circuit court erred in allowing Martin access to exhibits that were admitted during Martin’s trial. It asserts that the circuit court did not first determine whether Martin had complied with
 
 Ex parte Land
 
 when granting Martin’s motion for access.
 

 Both in circuit court and in this mandamus proceeding Martin argues that he is entitled to review the trial exhibits because the exhibits are public records, records, he argues, that he has an absolute right to inspect. He asserts that statutory law, § 36-12-40, Ala.Code 1975, and common law support the grant of his motion for access. Last, Martin contends that he was not required to satisfy the
 
 Ex parte Land
 
 requirement of “good cause” because the exhibits were public records.
 

 The Alabama Supreme Court in
 
 Holland v. Eads,
 
 614 So.2d 1012 (Ala.1993), stated the following concerning the right to inspect court records of a public trial:
 

 “The United States Supreme Court has recognized a common law right of public access to judicial records.
 
 Nixon v. Warner Communications, Inc.,
 
 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). ‘ “It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.” ’
 
 United States v. Criden,
 
 648 F.2d 814, 819 (3d Cir.1981), quoting
 
 Nixon, supra,
 
 435 U.S. at 597, 98 S.Ct. at 1312. In fact, this right of the public to inspect and copy judicial records antedates the United States Constitution.
 
 Criden, supra.
 

 “It has long been the rule of this State to allow public inspection of judicial records. Br
 
 ewer v. Watson,
 
 61 Ala. 310, 311 (1878). More than a century ago, this Court held that ‘[a]n inspection of the records of judicial proceedings kept in the courts of the country, is held to be the right of any citizen.’
 
 Id.
 
 at 311;
 
 see also Ex parte Balogun,
 
 516 So.2d 606, 612 (Ala.1987) (holding that ‘the public generally has a right of reasonable inspection of
 
 public records required by law to be kept,
 
 except where inspection is merely out of curiosity or speculation or where it unduly interferes with the public official’s ability to perform his duties’);
 
 Excise Comm’n of Citronelle v. State ex rel. Skinner,
 
 179 Ala. 654, 657, 60 So. 812, 813 (1912). The public’s right to inspect court records derives from the ‘universal policy underlying the judicial systems of this country [that] secrecy in the exercise of judicial power ... is not tolerable or justifiable.’
 
 Jackson v. Mobley,
 
 157 Ala. 408, 411-12, 47 So. 590, 592 (1908).
 

 “In addition to a common law presumption of permitting public inspection of judicial records, which has been recognized by the United States Supreme Court and by this Court, public access to court records is permitted by statute. Ala.Code 1975, § 36-12-40, grants the public the right to inspect and copy ‘public writings,’ which term has been interpreted to include judicial records.
 
 Ex parte Balogun,
 
 supra;
 
 Stone v. Consolidated Publishing Co.,
 
 404 So.2d 678, 681 (Ala.1981) (interpreting a ‘public writing’ to be ‘a record as is
 
 reasonably necessary
 
 to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by our citizens’);
 
 State ex rel. Kernells v. Ezell,
 
 291 Ala. 440, 442-43, 282 So.2d 266, 268 (1973)
 
 *1202
 
 (holding that records of the office of the probate judge are ‘public writings’ within the meaning of the predecessor to § 86-12-40 and are ‘free for examination [by] all persons, whether interested in the same or not’);
 
 Excise Comm’n of Citronelle,
 
 supra;
 
 Brewer,
 
 supra.”
 
 [5]
 

 614 So.2d at 1014-15. The Alabama Supreme Court in
 
 Ex parte Balogun,
 
 516 So.2d 606 (Ala.1987), noted that exhibits that are admitted at trial are within the “public domain” and are subject to inspection. 516 So.2d at 612. See also
 
 Copley Press, Inc. v. Administrative Office of Courts,
 
 271 Ill.App.3d 548, 555, 648 N.E.2d 324, 329, 207 Ill.Dec. 868, 873 (1995) (“[T]he records in question were judicial records, and the case law provides that such records are subject to disclosure only to the extent that they have been introduced into evidence in court.”).
 

 Accordingly, Martin was not required to establish good cause before he was entitled to inspect the trial exhibits. The exhibits admitted at Martin’s trial were public records. Judge Smith did not abuse his discretion in granting Martin’s motion for access. Thus, the State is due no relief on this claim.
 

 For the reasons stated in Part I of this opinion this petition is granted in part. All other relief requested in this petition is denied. The circuit court is directed to comply with
 
 Ex parte Land
 
 and the eases cited above when considering Martin’s discovery motion. The circuit court may direct Martin to file a new discovery motion given that Martin has filed an amended Rule 32 petition.
 

 PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
 

 BASCHAB, P.J., and McMILLAN, WISE, and WELCH, JJ., concur; SHAW, J., concurs in the result.
 

 [1]
 

 . Judge Ferrill McRae presided over Martin’s trial, but Judge McRae retired before the Rule 32 proceedings. Judge Robert Smith issued the orders that are the subject of this mandamus petition.
 

 [2]
 

 . This petition was timely filed. It was filed within seven days of February 21, 2008. Rule 21(a), Ala.R.App.P.
 

 [3]
 

 . This motion defined "prosecution" files as those files in the possession of: the attorney general, the district attorney, the Mobile County Sheriff’s Department, the Mobile Police Department, the Mobile County Coroner, the Alabama Bureau of Investigation, the Alabama Department of Public Safety, and “any
 
 *1200
 
 other law enforcement governmental, or public service agency not previously named.”
 

 [4]
 

 . The discovery motion was broad. For example, it requested that the attorney general's office disclose the following information:
 

 "Each document relating to any communications or statements (whether written or oral), memoranda, summaries or recordings of such communications or statements, as well as grand jury testimony, made to or by Kathy Austin [this person is not identified]; all documents that fall within the parameters outlined above in this paragraph that relate to any communication or statement made on or after October 8, 1995, the date of the alleged murder of Hammolekelh Martin .... ”
 

 [5]
 

 . The Supreme Court in
 
 Holland v. Eads
 
 stated that some records are not subject to public inspection. Those records include: (1) trade secrets, etc.; (2) matters of national security; (3) records that promote scandal or defamation; (4) records that involve divorce, child custody, or adoption; (5) records that pose a serious threat of harassment, exploitation, physical intrusion, or other harm to the parties; or (6) records that pose the potential for harm to third persons involved in the litigation. 614 So.2d at 1016. This case involves none of those type of records.