THOMAS, Judge.
Michael Gentry (“the father”) seeks review of orders of the Jefferson Circuit Court (“the trial court”) entered in consolidated grandparent-visitation actions filed by Nancy Norris Schillaci (“the maternal grandmother”) and Ben Schillaci (“the maternal stepgrandfather”) and by Eddie Raymond Gentry (“the paternal grandfather”) and Robin Lynne Gentry (“the paternal stepgrandmother”). The attachments to the father’s petition for the writ of mandamus and the answers filed with this court reveal the following facts and procedural history.
The father and - his wife, Whitney Gen-trys who died in February 2014, were the parents of three children, In August 2016, the maternal grandmother and the maternal stepgrandfather filed a complaint in the trial court seeking an award of visitar tion with the- children pursuant to Ala. Code 1975, § 30-3-4.2, which became effective on August 1, 2016, See Act No. 2016-362, § 6, Ala. Acts 2016. That same day, the paternal grandfather and the paternal stepgrandmother filed a ' similar complaint. The trial court consolidated the actions and appointed a guardian ad litem for the children.
In September 2016, the father moved to dismiss the. actions. One of the arguments the father asserted in his motion, as amended, was that the maternal step-grandfather and the paternal stepgrand-mother should be dismissed as parties to their respective actions because, he contended, neither is a “grandparent” as that term is defined in § 30-3-4,2(a)(1); there *1019 fore, the father argued, they lacked “standing” to bring the actions under § 30-3-4.2(b). The trial court denied the father’s motion by order entered on October 3, 2016.
On October 11, 2016, the guardian ad litem filed on behalf of the children what she labeled as a “cross claim” against the father.[1] The “cross claim" contained three counts: a request for a judgment declaring that the children have a liberty interest in familial association with their extended family and two identical counts requesting an injunction requiring the father to permit continued association between the children and their extended family. Counts two and three asserted that the children’s rights to familial association had “been infringed under color of state law.”
The father, on October 25, 2016, filed a motion to dismiss the “cross claim,” in which he asserted various arguments. At a hearing held on November 16, 2016, the trial court orally granted the father’s motion to dismiss regarding counts two and three of the “cross claim” but denied the motion as to count one, the declaratory-judgment count. The trial court did not render or enter a written order on the father’s motion to dismiss.
On December 1, 2016, the trial court entered an order directing the circuit-court clerk to “place this entire case UNDER SEAL” (capitalization in original). The December 1, 2016, order states no reason for the trial court’s decision to seal the cases. No party had moved for such relief, and no hearing regarding the decision to seal the cases had been held. The maternal grandmother and maternal stepgrandfather state in their answer to the father’s petition for the writ of mandamus that the trial court, at a hearing held on December 2, 2016, “addressed the qrder sealing the [cases].”[2] They further assert that the trial court sealed .the cases because the cases “involve[ ] minor children and embarrassment or irreparable harm could occur.” No party has provided this court with transcripts of any hearings before the trial court.
The father filed his mandamus petition on December 2, 2016. In that petition, he first seeks review of the trial court’s October 3, 2016, order denying his motion to dismiss the maternal stepgrandfather and the paternal stepgrandmother from the actions because, he contends, they are not grandparents as defined in § 30-3-4.2(a)(1) and therefore lack “standing” to bring the actions. He also seeks review of the trial court’s oral order denying his motion to dismiss count one of the “cross claim”- brought by the guardian ad litem on behalf of the children. Finally, the father seeks review of the trial court’s December 1, 2016, sua sponte order sealing the consolidated cases.
We must first consider whether, insofar as he seeks review of the trial court’s October 3, 2016, order denying his motion to dismiss the maternal stepgrand-father'and the paternal stepgrandmother from the actions, the father has timely invoked our jurisdiction. As we have recently reiterated, “Rule 21(a)(3), Ala. R. App. P., provides that a petition for the *1020 writ of mandamus is presumptively timely if it is filed within the period permitted for an appeal of a judgment of the court in which the challenged order was entered.” Ex parte J.B., 223 So.3d 251, 253 (Ala. Civ. App. 2016). The father filed his mandamus petition more than 42 days after the entry of the October 3, 2016, order.
Our inquiry does not end there, however.
“[O]ur supreme court recently determined that, in situations in which a petition for the writ of mandamus challenges the subject-matter jurisdiction of the court in which the challenged interlocutory order was rendered, the petition need not timely invoke the jurisdiction of the appellate court. Ex parte K.R., 210 So.3d 1106, 1112 (Ala. 2016). Instead, relying on the principle that an appellate court may review the- issue of subject-matter jurisdiction regardless of whether that issúe was raised in the trial, court or even on appeal, our supreme court stated that subject-matter jurisdiction could be raised , ex mero motu at any time despite the lack of a timely filed petition invoking the appellate court’s jurisdiction. Ex parte K.R., 210 So.3d at 1112.”
Ex parte J.B., 223 So.3d at 254.
The father contends that he is challenging whether the maternal stepgrandfather and the paternal stepgrandmother have “standing” to bring an action under § 30-3-4.2(a)(1) because they do not fall within the definition of “grandparent” contained in that section. Standing, he correctly states, implicates subject-matter jurisdiction. See Bernals, Inc. v. Kessler-Greystone, LLC, 70 So.3d 315, 319 (Ala. 2011). Therefore, he says, under Ex parte J.B., his failure to timely invoke the jurisdiction of this court is not fatal to his petition insofar as it challenges the October 3, 2016, order denying his motion to dismiss.
We disagree with the father that the maternal stepgrandfather and the paternal stepgrandmother lacked standing to be named as plaintiffs in the consolidated actions. Our supreme court has indicated, in two plurality opinions, that a majority of the supreme court recognized in Ex parte BAC Home Loans Servicing, LP, 159 So.3d 31, 46 (Ala. 2013), that the concept of standing should be confined to public-law cases. See Gardens at Glenlakes Prop. Owners Ass’n, Inc. v. Baldwin Cty. Sewer Serv., LLC, 225 So.3d 47, 53-54 (Ala. 2016), and Jakeman v. Lawrence Grp. Mgmt. Co., LLC, 151 So.3d 1083, 1087-88 (Ala. 2014). As explained in Jakeman, “in private-law cases such questions as whether ‘ “the present plaintiff is ... entitled to a remedy” ’ is “ ‘better addressed through private-law concepts’” such as ‘ “cause-of-action, real-party-in-interest, capacity, intervention, and like concepts.” ’ ” Jakeman, 151 So.3d at 1088 (quoting Ex parte BAC, 159 So.3d at 44-45, quoting in turn 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531 (3d ed. 2008)). We need not decide whether the father’s challenge to the ability of the maternal stepgrandfather and the paternal stepgrandmother to bring a grandparent-visitation action is a challenge to their capacity or a claim that they are not real parties in interest, see Dennis v. Magic City Dodge, Inc., 524 So.2d 616, 618 (Ala. 1988) (quoting 6 C. Wright & A. Miller, Federal Practice and Procedure § 1542 (1971)) (“‘[T]he real party in interest principle is a means to identify the person who possesses the right sought to be enforced. Therefore, the term directs attention to whether plaintiff has a significant interest in the particular action he has instituted. By way of contrast, capacity is conceived to be a party’s *1021 personal right to litígate.... ’ because a challenge premised on either concept does not implicate the trial court’s subject-matter jurisdiction. See CAG MLG, L.L.C. v. Smelley, 163 So.3d 346, 350 (Ala. 2014) (indicating that capacity does not implicate subject-matter jurisdiction); Ex parte Sterilite Corp. of Alabama, 837 So.2d 815, 819 (Ala. 2002) (stating that “objections based upon an action’s not being prosecuted in the name of the real party in interest can be waived,” which supports the conclusion that the real-party-in-interest issue does not implicate subject-matter jurisdiction, which cannot be waived); see also Hamm v. Norfolk Southern Ry. Co., 52 So.3d 484, 500 (Ala. 2010) (Lyons, J., concurring specially) (“Obviously, an absence of a real party in interest does not implicate subject-matter jurisdiction....”). Because the subject-matter jurisdiction of the trial court is not at issue, the father’s petition is untimely insofar as he seeks review of the October 3, 2016, order denying his motion to dismiss. The father’s petition, insofar as it seeks review of the October 3, 2016, order, is therefore dismissed.
We turn now to the father’s request that this court review the trial court’s oral denial of his motion to dismiss count one of the “cross claim” asserted by the guardian ad litem on behalf of the children. We first recognize that an oral order “ha[s] no lawful field of operation,” Hobbs v. Hobbs, 423 So.2d 878, 879 (Ala. Civ. App. 1982), and therefore that an oral order or judgment is not valid. Bell v. Bell, 509 So.2d 912, 914 (Ala. 1987). Rule 58(a), Ala. R. Civ. P., provides that
“[a] judge may render an order or a judgment: (1) by executing a separate written document, (2) by including the order or judgment in a judicial opinion, (3) by endorsing upon a motion the words ‘granted,’ ‘denied,’ ‘moot,’* or words of similar import, and dating and signing or initialing it, (4) by making or causing to be made a notation in the court records, or (5) by executing and transmitting an electronic document to the electronic-filing system.”
As our supreme court has'explained, “Rule 58(a) requires, in each instance, a writtfen memorialization by the judge of his or her rendition of the order or judgment in question. Stated otherwise, Rule 58(a) does not allow for an oral rendition of a judgment or order.” Ex parte Chamblee, 899 So.2d 244, 248 (Ala. 2004); see also Meek v. Meek, 54 So.3d 389, 393 (Ala. Civ. App. 2010). Because no lawful or valid order of the trial court has been rendered or entered regarding the father’s motion to dismiss the guardian ad litem’s “cross claim,” the father has no order from which to seek relief. We therefore deny the father’s petition insofar as he seeks relief from the trial court’s oral denial of his motion to dismiss count one of’ the “cross claim” asserted by the guardian ad litem on behalf of the children.
Finally, we consider the father’s argument that the trial court’s December 1, 2016, order sealing the consolidated cases was improperly entered. The materials before us demonstrate, and the parties agree, that no motion seeking to seal any document in the record was presented to the trial court. In addition, the parties agree that no hearing was held on the question of sealing the record before the trial court entered its December 1, 2016, order. The respondents argue, generally, that, because no motion was- presented to the trial court, the requirement in Holland v. Eads, 614 So.2d 1012 (Ala. 1993), that the trial court hold a hearing before ordering that a document in a record be sealed has no application to the present case. Furthermore, the guardian ad litem con *1022 tends that, if the trial court had held a hearing, it would have sealed the. cases and, therefore, that any error in not holding the hearing required by Holland was harmless. See Rule 45, Ala. R. App. P. The maternal grandmother and maternal step-grandfather also contend that the trial court had ample reason to seal the record and that it discussed its decision to seal the cases in a December 2, 2016, hearing; however,, as noted above, we have no transcript of any hearing held before the trial court.
“ ‘ “A writ of mandamus is an extraordinary remedy that is available when a trial court has exceeded its discretion. Ex parte Fidelity Bank, 893 So.2d 1116, 1119 (Ala. 2004). A writ of mandamus is ‘appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’ Ex parte BOC Group, Inc., 823 So.2d 1270, 1272 (Ala. 2001).” ’ ”
Ex parte Brown, 963 So.2d 604, 606-07 (Ala. 2007) (quoting Ex parte Rawls, 953 So.2d 374, 377 (Ala. 2006), quoting in turn Ex parte Antonucci, 917 So.2d 825, 830 (Ala. 2005)).
We begin our analysis of this issue with the excellent discussion in Holland:
‘“Generally, trials are open to the public. However, public access must be balanced with the effect on the parties.’ Ex parte Balogun, 516 So.2d 606, 610 (Ala. 1987). Nevertheless, the decision concerning access ;to the court records has long been recognized as within the trial court’s discretion. Nixon v. Warner Communications, Inc., 435 U.S. 689, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). This does not mean that the trial court’s discretion should be unfettered; rather,-it should be governed by legal rules and standards, - ■ '
[[Image here]]
“The United States Supreme Court has recognized a common law right of public access to judicial records. Nixon v. Warner Communications, Inc., 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). ‘“It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.”’ United States v. Criden, 648 F.2d 814, 819 (3d Cir. 1981), quoting Nixon, supra, 435 U.S. at 597, 98 S.Ct. at 1312. In fact, this right of the public to inspect and copy judicial records antedates the United States Constitution. Criden, supra.
“It has long been the rule of this State to' allow public inspection of judicial records. Brewer v. Watson, 61 Ala. 310, 311 (1878). More than a century ago, this Court held that ‘[a]n inspection of the records of judicial proceedings kept in the courts of the country, is held to be the right of any citizen.’ Id. at 311; see also Ex parte Balogun, 516 So.2d 606, 612 (Ala. 1987) (holding that ‘the public generally has a right of reasonable inspection of public records required by law to be kept, except where inspection is merely out of curiosity or speculation or where it unduly interferes with the public official’s' ability to perform his duties’); Excise Comm’n of Citronelle v. State ex rel. Skinner, 179 Ala. 654, 657, 60 So. 812, 813 (1912). The public’s right to inspect court records derives from the ‘universal policy underlying the judicial systems of this country [that] secrecy in the exercise of judicial power ... is not tolerable or justifiable.’ Jackson v. Mob *1023 ley, 157 Ala. 408, 411-12, 47 So. 590, 592 (1908).
“In addition to a common law presumption of permitting public inspection of judicial records, which has been recognized by the United States Supreme Court and by this Court, public access to court records is permitted by statute. Ala. Code 1975, § 36-12-40, grants the public the right to inspect and copy ‘public writings/' which term has been interpreted to include judicial records. Ex parte Balogun, supra; Stone v. Consolidated Publishing Co., 404 So.2d 678, 681 (Ala. 1981) (interpreting a ‘public writing’ to be ‘a record as is reasonably necessary to record the business and activities required to ¡be done or carried on by a public officer so that the' status and condition of such business and activities can be known by our citizens’); State ex rel. Kernells v. Ezell, 291 Ala. 440, 442-43, 282 So.2d 266, 268 (1973) (holding that records of the office of the probate judge are ‘public writings’ within the meaning of the predecessor to § 36-12-40 and are ‘free for examination [by] all persons, whether interested in the same or not’); Excise Comm’n of Citronelle, supra; Brewer, supra.
“Limitations of the public’s right to inspect ‘must be strictly construed and must be applied only in those cases where it is readily apparent that disclosure will result in undue harm or embarrassment to an individual, or where the public interest will clearly be adversely affected, when weighed against the public policy considerations suggesting disclosure.’ Chambers v. Birmingham News Co., 552 So.2d 854, 856 (Ala. 1989). The party refusing disclosure bears the bur den of ‘proving that the writings or records sought are within an exception and warrant nondisclosure of them.’ Chambers, at 856-57; Ex parte CUNA Mutual Ins. Society, 507 So.2d 1328, 1329-(Ala. 1987); Ex parte McMahan, 507 So.2d 492, 493 (Ala. 1987). This Court has held that the following, types of records do not warrant disclosure: ‘[recorded information received by a public officer in confidence, sensitive personnel records, pending criminal investigations, and records the disclosure of- which would be. detrimental to the best interests of the .public.’ Stone, 404 So.2d at 681.
“Most other courts that- have addressed- this issue have recognized a similar presumption of a right of public access to judicial proceedings and records and have placed, .the burden on the party seeking secrecy. Brown v. Advantage Engineering, Inc., 960 F.2d 1013 (11th Cir. 1992); Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988); Bank of America National Trust and Sav. Ass’n v. Hotel Rittenhouse Associates, 800 F.2d 339, 343 (3d Cir. 1986); Brown & Williamson Tobacco Com. v. F.T.C., 710 F.2d 1165, 1179 (6th Cir. 1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984); In re National Broadcasting Co., 653 F.2d 609, 613 (D.C. Cir. 1981); Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113, 118 (Fla. 1988).
“The Court of Appeals for the Eleventh Circuit holds that the trial court must apply a balancing test in determining whether to seal a record, ‘ “weighing the competing interests of preserving the district court’s authority in. encouraging settlement agreements and the public’s right to access to public trials” ’ and records. Brown v. Advantage Engineering, Inc., supra, at 1015, quoting Wilson v. American Motors Corp., 759 F.2d 1568, 1569 (11th Cir. 1985).
“The Court of Appeals for the Sixth Circuit also recognizes a public right of access to judicial records. Brown & Wil *1024 liamson Tobacco Corp., supra. The Sixth Circuit has noted that few reasons warrant closure of public records. Id. The court indicated that some of these reasons include a defendant’s right-to a fair trial, certain privacy rights of participants or third parties, trade secrets, and national security. Id.
“The Court' of Appeals for the Third Circuit holds that, in balancing the factors for and against access, the interest in settling disputes does not outweigh the common law presumption of open access to court documents and orders. Bank of America National Trust, supra.
“We have examined the different approaches used in other jurisdictions. In light of the public policy in favor of public access and the prevailing analysis of this presumption in most American courts, we hold that if a motion to seal is filed, then the trial court shall conduct a hearing. The trial court shall not seal court records except upon a written finding that the moving party has proved by clear and convincing evidence that the information contained in the document sought to be sealed:
“(1) constitutes a trade secret or other confidential commercial research or information; see Brown & Williamson Tobacco Corp., supra, at 1179; or
“(2) is a matter of national security; see Barron, supra, at 118; or
“(3) promotes scandal or defamation; or
“(4) pertains to wholly private family matters, such as divorce, child custody, or adoption; see Warner, supra; Balogun, supra; Holcombe v. State ex rel. Chandler, 240 Ala. 590, 200 So. 739 (1941); or
“(5) poses a serious threat of harassment, exploitation, physical intrusion, or other particularized' harm to the parties to the action; or
“(6) poses the potential for harm to third persons not parties to the litigation.
“If any one of the above criteria is satisfied, then the trial court may seal the record, or any part of the record, before trial, during trial, or even after a verdict has been reached.
“This approach limits, but does not abolish, the range of judicial discretion. There is a presumption in favor of openness, which can be overcome only by clear and convincing evidence that an individual’s privacy interest (as set out above) rises above the public interest in access.”
Holland, 614 So.2d at. 1013-16 (final two emphases added).
The December 1, 2016, order sealing the consolidated cases contains no written findings indicating that the entire record in the consolidated cases warrants such an extreme measure. The wholesale sealing of an entire record is by its nature overbroad. See Duck Head Apparel Co. v. Hoots, 659 So.2d 897, 916 (Ala. 1995). Furthermore, the trial court failed to hold a hearing at which the parties could argue their respective positions on the sealing issue. See Ex parte Birmingham News Co., 624 So.2d 1117, 1122 (Ala. 1993) (requiring a trial court to hold a hearing on its sua sponte “gag” order in a criminal prosecution). Accordingly, we grant the father’s petition insofar as it challenges the December 1, 2016, order sealing the consolidated cases in their entirety.
We' reiterate: “Limitations of the public’s right to inspect ‘must be strictly construed and must be applied only in those cases where it is readily apparent that disclosure will result in undue harm or embarrassment to an individual, or where the public interest will clearly be adversely affected, when weighed against *1025 the public policy considerations suggesting disclosure.”’ Holland, 614 So.2d at 1016 (quoting Chambers v. Birmingham News Co., 552 So.2d 854, 856 (Ala. 1989)). Although no party brought a motion seeking to seal any part of the record, we conclude that, under Holland, a trial court considering whether to seal documents must hold a hearing at which the parties may present arguments regarding the necessity of sealing specific parts of the record.[3] Any order sealing any portion of the record must contain written findings in compliance with Holland that clear and convincing evidence supports a conclusion that the relevant “privacy interest (as set out [in Holland]) rises above the public interest in access.” Holland, 614 So.2d at 1016.
PETITION DISMISSED IN PART, DENIED IN PART, AND GRANTED IN PART; WRIT ISSUED.
Thompson, P. J., and Pittman, Moore, and Donaldson, JJ., concur.

. We note that Rule 13(g), Ala. R. Civ. P., provides that' "[a] pleading may state as a cross-claim any claim by one patty against a co-party, arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action.” The materials before this court do not demonstrate that the children are parties to the consolidated actions. '

. The paternal grandfather and paternal step-grandmother did not file an answer to the father’s petition.

. We note that a trial court could enter a sua sponte order temporarily sealing a document pending the required hearing. See, e.g., In re FiberMark, Inc., 330 B.R. 480, 496 (Bankr. D. Vt. 2005). However, as explained in In re FiberMark, at the hearing "the posture of [the case at the time of the hearing would be] the same as the posture of a request to seal an unsealed document,” 330 B.R. at 496, and any party wishing to seal the document would have the burden under Holland to establish “by clear and convincing evidence that [his or her] privacy interest (as set out [in Holland]) rises above the public interest in access.” Holland, 614 So.2d at 1016.