# Brewer, Auditor, *v.* Watson.

## *Application for Mandamus.*

1. *Inspection of public record of executive department; when denied.*—Where the party has no interest, or the disclosure sought would be detrimental to the public interests, inspection of the records of an executive department of the government may be denied.

2. *Same; when can not be denied.*—Public interests are not endangered, by allowing a tax-collector, or his attorney, to inspect the collector's account with the State, as kept in books in the Auditor's office; and if such inspection is requested, and the Auditor denies it, *mandamus* lies against him.

APPEAL from Montgomery City Court.
Tried before Hon. JOHN A. MINNIS.
The facts are contained in the opinion.

JOHN W. A. SANFORD, for appellant.

GEO. F. MOORE, *contra.*

MANNING, J.—In his petition, appellee alleged that he was an attorney-at-law and proctor, licensed to practice as such in the courts of this State, and a citizen thereof; that one " J. F. Boyles was, during the year 1875, duly and legally acting as tax-collector of the county of Monroe," and as such had an account with the State, which was and is kept in a public record and book of the Auditor's office, " known as the Tax Ledger, which contains the accounts of the tax-collectors of the State with the State of Alabama;" that Boyles employed petitioner as an attorney-at-law to collect a balance claimed to be due to him as tax-collector; and that petitioner had demanded in writing of the Auditor of the State (Mr. Brewer) the right to inspect as attorney for Boyles the said account with him on the tax ledger; which was denied and refused to him by the Auditor: wherefore a writ of *mandamus* was prayed.

The City Court granted the writ in the alternative—that the Auditor permit the inspection of the account, or show cause why he should not, on a day specified in the writ. On that day the Auditor appeared and demurred, alleging that no right was shown by petitioner to the writ; and the de--

murrer being overruled the Auditor declined to plead further and appealed to this court.

An inspection of the records of judicial proceedings kept in the courts of the country, is held to be the right of any citizen.—1 Greenl. on Ev. (8 ed.) § 471. But it seems that books kept in the public offices of the executive department are not—at least all of them—equally open to examination. It is said that "access to them will not be granted to persons who have no interest in the books." What the nature or extent of the interest must be, need not now be considered. "Such inspections are also sometimes refused on grounds of public policy, the disclosure sought being thought detrimental to the public interest."—Id. §§ 475, 250.

Neither of these reasons though, could be alleged in opposition to the application made in this instance. The petitioner disclosed an interest as attorney for a late tax-collector, which gave him a right, by the common law, to inspect the accounts of his client with the State, in the Auditor's office; and no legitimate interest of the State could be endangered by permitting him to do so. The account was a thing of common concern to the State and its ex-official, and it must be presumed that both were equally desirous that it should be correct. Boyles might, besides, properly seek to know how his accounts stood, with a view to using them in support of a claim against some other person.

The common law right of one whom they concern, to be informed of matters of that sort, is emphasized by a statute prescribing the duties of the Auditor, which requires him to "certify under his official seal, . . . on application and payment of the legal fees therefor, for private or personal use, copies of any paper required to be kept in his office." Code of 1876, § 85, cl. 21. This implies that there is a right first to see the paper; for how could it otherwise be known whether or not it would be of any use?

This statute seems to have been enacted rather for the particular purpose of enabling citizens who might need them to obtain duly authenticated available copies of papers on file in the Auditor's office, than any thing else. And we presume that if the information that might thereby be communicated, would injuriously affect any important public interest, such, for instance, as might be involved in a grave pending negotiation, the Auditor might lawfully decline either to grant copies or allow an inspection of the originals. However, that is a question not before us, and which need not now be decided.

Petitioner is without any other adequate remedy for the enforcement of his right to inspect his client's account, and therefore properly prayed the aid of a writ of *mandamus*.

There was no error in the judgment of the City Court overruling the demurrer, and it is affirmed.