ON APPLICATION FOR REHEARING
The opinion of September 4, 1992, is withdrawn, and the following is substituted therefor.
Joe and Marcia Holland, Lester Crowder, and John E. Sweat, Jr. (hereinafter collectively referred to as "Holland"), filed a motion to intervene pursuant to Rule 24(a), A.R.Civ.P., for the purpose of unsealing the record in a prior case in the Etowah Circuit Court, Eads v. Sutherlin Toyota, Inc.
(CV-88-021) (hereinafter referred to as "Eads"). The trial court denied the motion.
The Eads case was tried before a jury for six days in October 1989, after which the jury returned a verdict in favor of Eads and against World Omni Leasing, Inc. Before the entry of a judgment on that verdict, the parties reached a settlement in lieu of appealing the case. As part of the settlement agreement, the trial court dismissed the case with prejudice and ordered the immediate sealing of the entire court file, including notes and tapes of the court reporter. Further, the trial court ordered that the file and the court reporter's notes not be made available to any person.
In December 1991, two years later, Holland sought to intervene in the Eads case for the purpose of obtaining theEads trial transcript for use in a similar case against one of the defendants in the Eads case. The trial court denied the motion to intervene, and this appeal followed.
"Generally, trials are open to the public. However, public access must be *Page 1014 
balanced with the effect on the parties." Ex parte Balogun,516 So.2d 606, 610 (Ala. 1987). Nevertheless, the decision concerning access to the court records has long been recognized as within the trial court's discretion. Nixon v. WarnerCommunications, Inc., 435 U.S. 589, 98 S.Ct. 1306,55 L.Ed.2d 570 (1978). This does not mean that the trial court's discretion should be unfettered; rather, it should be governed by legal rules and standards.
However, neither this Court, nor the legislature of this State, has set out comprehensive rules or standards concerning the sealing of court records or the "enforcement of covenants of silence [which] are becoming increasingly common practices in the settlement of civil lawsuits." Note, Sealed Out-of-CourtSettlements: When Does the Public Have a Right to Know? 66 Notre Dame L.Rev. 117 (1990). The lack of such rules or guidelines may be attributable to the fact that there were few cases directly addressing this issue before 1983. "Through media and other public interest group intervention, appellate courts are just beginning to scrutinize sealing orders more closely." Note, supra, at 118.
Here, we are not faced with whether the originalEads case should have been sealed. That decision and the time for appeal have long since run. Rather, in this instance, we are concerned with whether a third party may "intervene" and have a previously sealed record reopened.
 " '[O]rdinary principles applicable to intervention do not work well here. The filing of a motion to intervene is simply recognized as an appropriate means of raising assertions of public rights of access to information regarding matters in litigation. . . .
 " '[T]o the extent [a right of access] exists, it exists today for the records of cases decided a hundred years ago as surely as it does for lawsuits now in the early stages of motions litigation. The fact that a suit has gone to judgment does not in any sense militate against the public's right to prosecute a substantiated right to see the records of a particular case.' "
Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 786 (1st Cir. 1988), cert. denied, 488 U.S. 1030, 109 S.Ct. 838,102 L.Ed.2d 970 (1989), quoting Mokhiber v. Davis, 537 A.2d 1100,1105-06 (D.C.App. 1988).
Unless intervention is liberally applied to third parties seeking access to previously sealed records, the common law presumption in favor of the public's right of access to judicial records will be abrogated. In addition, for the reasons specified in Public Citizen, the ordinary requirements for parties seeking intervention should not apply. Unless a closure order is subject to challenge by a motion to intervene, that order would never be subject to challenge, because no third party would have a procedural mechanism to challenge it. Accordingly, we hold that a motion to intervene is the procedurally correct means to seek the opening of a sealed court file.
As noted above, there are no comprehensive standards to guide the courts of this state in determining whether to initially seal a record, much less in determining when a court should reopen a sealed court file. Therefore, we take this opportunity to address this issue.
The United States Supreme Court has recognized a common law right of public access to judicial records. Nixon v. WarnerCommunications, Inc., 435 U.S. 589, 98 S.Ct. 1306,55 L.Ed.2d 570 (1978). " 'It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.' "United States v. Criden, 648 F.2d 814, 819 (3d Cir. 1981), quoting Nixon, supra, 435 U.S. at 597, 98 S.Ct. at 1312. In fact, this right of the public to inspect and copy judicial records antedates the United States Constitution. Criden,supra.
It has long been the rule of this State to allow public inspection of judicial records. Brewer v. Watson, 61 Ala. 310,311 (1878). More than a century ago, this Court held that "[a]n inspection of the records of judicial proceedings kept in the courts of the country, is held to be the right of any *Page 1015 
citizen." Id. at 311; see also Ex parte Balogun, 516 So.2d 606,612 (Ala. 1987) (holding that "the public generally has a right of reasonable inspection of public records required by law tobe kept, except where inspection is merely out of curiosity or speculation or where it unduly interferes with the public official's ability to perform his duties"); Excise Comm'n ofCitronelle v. State ex rel. Skinner, 179 Ala. 654, 657,60 So. 812, 813 (1912). The public's right to inspect court records derives from the "universal policy underlying the judicial systems of this country [that] secrecy in the exercise of judicial power . . . is not tolerable or justifiable." Jacksonv. Mobley, 157 Ala. 408, 411-12, 47 So. 590, 592 (1908).
In addition to a common law presumption of permitting public inspection of judicial records, which has been recognized by the United States Supreme Court and by this Court, public access to court records is permitted by statute. Ala. Code 1975, § 36-12-40, grants the public the right to inspect and copy "public writings," which term has been interpreted to include judicial records. Ex parte Balogun, supra; Stone v.Consolidated Publishing Co., 404 So.2d 678, 681 (Ala. 1981) (interpreting a "public writing" to be "a record as isreasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by our citizens"); State ex rel. Kernells v. Ezell,291 Ala. 440, 442-43, 282 So.2d 266, 268 (1973) (holding that records of the office of the probate judge are "public writings" within the meaning of the predecessor to § 36-12-40
and are "free for examination [by] all persons, whether interested in the same or not"); Excise Comm'n of Citronelle, supra; Brewer, supra.
Limitations of the public's right to inspect "must be strictly construed and must be applied only in those cases where it is readily apparent that disclosure will result in undue harm or embarrassment to an individual, or where the public interest will clearly be adversely affected, when weighed against the public policy considerations suggesting disclosure." Chambers v. Birmingham News Co., 552 So.2d 854,856 (Ala. 1989). The party refusing disclosure bears the burden of "proving that the writings or records sought are within an exception and warrant nondisclosure of them." Chambers, at 856-57; Ex parte CUNA Mutual Ins. Society, 507 So.2d 1328, 1329
(Ala. 1987); Ex parte McMahan, 507 So.2d 492, 493 (Ala. 1987). This Court has held that the following types of records do not warrant disclosure: "[r]ecorded information received by a public officer in confidence, sensitive personnel records, pending criminal investigations, and records the disclosure of which would be detrimental to the best interests of the public." Stone, 404 So.2d at 681.
Most other courts that have addressed this issue have recognized a similar presumption of a right of public access to judicial proceedings and records and have placed the burden on the party seeking secrecy. Brown v. Advantage Engineering,Inc., 960 F.2d 1013 (11th Cir. 1992); Rushford v. New YorkerMagazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988); Bank ofAmerica National Trust and Sav. Ass'n v. Hotel RittenhouseAssociates, 800 F.2d 339, 343 (3d Cir. 1986); Brown WilliamsonTobacco Corp. v. F.T.C., 710 F.2d 1165, 1179 (6th Cir. 1983),cert. denied, 465 U.S. 1100, 104 S.Ct 1595, 80 L.Ed.2d 127
(1984); In re National Broadcasting Co., 653 F.2d 609, 613
(D.C. Cir. 1981); Barron v. Florida Freedom Newspapers, Inc.,531 So.2d 113, 118 (Fla. 1988).
The Court of Appeals for the Eleventh Circuit holds that the trial court must apply a balancing test in determining whether to seal a record, " 'weighing the competing interests of preserving the district court's authority in encouraging settlement agreements and the public's right to access to public trials' " and records. Brown v. Advantage Engineering,Inc., supra, at 1015, quoting Wilson v. American Motors Corp.,759 F.2d 1568, 1569 (11th Cir. 1985).
The Court of Appeals for the Sixth Circuit also recognizes a public right of access to judicial records. Brown WilliamsonTobacco Corp., supra. The Sixth Circuit *Page 1016 
has noted that few reasons warrant closure of public records.Id. The court indicated that some of these reasons include a defendant's right to a fair trial, certain privacy rights of participants or third parties, trade secrets, and national security. Id.
The Court of Appeals for the Third Circuit holds that, in balancing the factors for and against access, the interest in settling disputes does not outweigh the common law presumption of open access to court documents and orders. Bank of AmericaNational Trust, supra.
We have examined the different approaches used in other jurisdictions. In light of the public policy in favor of public access and the prevailing analysis of this presumption in most American courts, we hold that if a motion to seal is filed, then the trial court shall conduct a hearing. The trial court shall not seal court records except upon a written finding that the moving party has proved by clear and convincing evidence that the information contained in the document sought to be sealed:
 (1) constitutes a trade secret or other confidential commercial research or information; see Brown Williamson Tobacco Corp., supra, at 1179; or
 (2) is a matter of national security; see Barron, supra, at 118; or
(3) promotes scandal or defamation; or
 (4) pertains to wholly private family matters, such as divorce, child custody, or adoption; see Warner, supra; Balogun, supra; Holcombe v. State ex rel. Chandler, 240 Ala. 590, 200 So. 739
(1941); or
 (5) poses a serious threat of harassment, exploitation, physical intrusion, or other particularized harm to the parties to the action; or
 (6) poses the potential for harm to third persons not parties to the litigation.
If any one of the above criteria is satisfied, then the trial court may seal the record, or any part of the record, before trial, during trial, or even after a verdict has been reached.
This approach limits, but does not abolish, the range of judicial discretion. There is a presumption in favor of openness, which can be overcome only by clear and convincing evidence that an individual's privacy interest (as set out above) rises above the public interest in access.
As noted above, the present case does not concern the original "sealing of the court record." That was done two years before any motion for intervention was filed. Rather, this is a case concerning the public right of access once certain records have already been sealed.
Here, the parties to the original Eads case have relied on the court's order of confidentiality, and we will presume that the trial court's decision to deny the intervention motion is correct. However, the question remains, what standard governs the trial court in ruling on such a motion to intervene.
In reviewing decisions of other jurisdictions, we find that some courts impose a heavy burden upon the intervening party and require a showing of extraordinary circumstances or compelling need to modify the order to seal. See Palmieri v.New York, 779 F.2d 861 (2d Cir. 1985). In re KnoxvilleNews-Sentinel Co., 723 F.2d 470 (6th Cir. 1983); FDIC v. Ernst Ernst, 677 F.2d 230 (2d Cir. 1982); Martindell v. InternationalTel. Tel. Corp., 594 F.2d 291 (2d Cir. 1979). This standard gives overwhelming weight to the parties' reliance, and, in effect, creates a presumption in favor of secrecy over access.Mokhiber v. Davis, 537 A.2d 1100 (D.C.App. 1988).
A more balanced approach is reached by the Court of Appeals for the District of Columbia. Mokhiber, supra. Under this analysis, the intervening party must produce evidence showing why the opponent's interest in secrecy is no longer sufficiently strong enough to outweigh the public interest in disclosure. This approach recognizes the public's right of access, but also gives stability to previous court orders. We find this approach to be the better reasoned view, so that an order to seal a record is always subject to continuing review and modification upon changed circumstances. See Mary R. v. B R Corp., 149 Cal.App.3d 308, 196 Cal.Rptr. 871 (1983).
In applying this standard, the court should look at several factors. See *Page 1017 Public Citizen, supra (trial court discussed factors to be considered in unsealing a record). First, the court should examine the length of time that the intervenor knew or reasonably should have known of its interest in the case before petitioning to intervene. Second, the court should look at the prejudice to existing parties due to the intervenor's delay in petitioning to intervene. Third, the court should consider the prejudice that the intervenor would suffer if he were not allowed to have the record unsealed. Fourth, the court should consider the existence of any extraordinary circumstances suggesting, or cautioning against, intervention.
Applying this approached to the present case, we find no error in the trial court's refusal to unseal the record in question. Although it did not have the benefit of our statement of the standards set out here, the trial court entered a detailed order denying the intervenors' motion to unseal the records. The trial court found that the original action was "protracted [and] expensive and involved over two years of substantial discovery and a lengthy trial," and that "[i]t also involved trade secrets and confidential information." Further, the trial court found that the applicants had "no inherent stake or common interest in the documents or records of the settled Eads action" and that they "now have their own case through which they can obtain much, if not all, of the same material presented in the Eads case through discovery processes." Based upon the trial court's findings, we find that the intervenors have not met their burden of showing why the sealed records no longer need to be sealed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.