Rel: November 8, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

## SC-2023-0651

_____

**Energy and Policy Institute**

**v.**

**Drummond Company, Inc.; Balch & Bingham, LLP; David Roberson; and Anna Roberson**

**Appeal from Jefferson Circuit Court**
**(CV-19-901210)**

PER CURIAM.

The Energy and Policy Institute ("EPI") appeals the Jefferson

Circuit Court's order denying its motion for leave to intervene for the

limited purpose of unsealing the record in the action filed by David Roberson and Anna Roberson against Drummond Company, Inc. ("Drummond"), and Balch & Bingham, LLP ("Balch") (Drummond and Balch are collectively referred to as "the defendants"). Because we conclude that EPI was entitled to intervene in the action, we reverse the trial court's order denying EPI's motion to intervene and remand the case for further proceedings consistent with this opinion.

## I. Facts

This appeal arises from the same underlying action that has twice been before us. In Roberson v. Balch & Bingham, LLP, 358 So. 3d 1118 (Ala. 2022) ("Roberson I"), we reversed the circuit court's judgment dismissing David Roberson's claims against Balch under the Alabama Legal Services Liability Act ("the ALSLA"), § 6-5-570 et seq., Ala. Code 1975. In Roberson v. Drummond Co., [Ms. SC-2022-0863, Feb. 9, 2024] ___ So. 3d ___ (Ala. 2024) ("Roberson II"), we affirmed the circuit court's order dismissing the Robersons' indemnification claim against Drummond. In those cases, we set forth the relevant facts, as follows:

> "David was a vice president of Drummond. In 2013, the Environmental Protection Agency proposed placing polluted property in Jefferson County on its 'National Priorities List'

2

for cleanup. The cleanup costs were estimated at over $100 million. To avoid responsibility for the cleanup costs, Drummond hired [Balch] to conduct a public-relations campaign to prevent the property from being placed on the National Priorities List. As part of that campaign, Balch employed the Oliver Robinson Foundation, which was controlled by then-Representative Oliver Robinson, to convince Birmingham residents not to have their property tested for toxins. After making payments to the foundation, Balch submitted invoices to Drummond for reimbursement.

"After receiving Balch's invoices, Drummond's general counsel asked David to approve payment of the invoices. David asked Joel Gilbert, a lobbyist employed by Balch, if he had asked Balch's ethics lawyers whether the plan was ethical and legal. Gilbert represented to David that Balch's ethics lawyers had reviewed the plan and determined that it was legal. David then approved payment of Balch's invoices. Thereafter, because he approved the payments to Balch, David was convicted of bribery in violation of federal law and was sentenced to 30 months in prison.

"After his conviction, David was allowed to remain free on bond pending his appeal. Drummond retained David as an employee on administrative leave and continued paying him his salary and benefits. A little over six and a half months later, Drummond terminated David's employment."

Roberson II, ___ So. 3d at ___.

"[O]n March 15, 2019, [David] Roberson commenced an action against Balch and Drummond in the Jefferson Circuit Court. In his initial complaint, Roberson asserted claims of negligence, fraud, suppression, and 'implied indemnity' against Balch and Drummond. On April 18, 2019, Balch filed a motion to dismiss the complaint …. Drummond also filed a motion to dismiss the complaint ….

"Roberson amended his initial complaint twice, expanding upon the factual allegations and retooling the assertion of his claims against each defendant. Balch filed motions to dismiss each of those complaints, repeating the arguments from its original motion to dismiss, and attaching more exhibits from Roberson's federal criminal trial.

"On November 11, 2019, Roberson filed the operative third amended complaint. …

"….

"On November 22, 2019, Balch filed a motion to dismiss the third amended complaint in which it repeated all the arguments it had presented in its previous motions to dismiss. …

"On August 25, 2020, the circuit court entered an order ruling on all outstanding motions except the defendants' motions to dismiss the third amended complaint. …

"On September 14, 2020, the circuit court entered a judgment granting Balch's motion to dismiss all claims asserted against it in Roberson's third amended complaint. …

"….

"… The circuit court also certified the judgment as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P., finding that the judgment disposed of all the claims against Balch and that there was no just reason for delay in entering a final judgment."

Roberson I, 358 So. 3d at 1122-25. The Robersons appealed.

4

On December 30, 2020, while the appeal in Roberson I was pending, the circuit court entered a protective order prohibiting counsel from making extrajudicial statements that would violate the guidelines set forth in Ex parte Wright, 166 So. 3d 618 (Ala. 2014) (plurality opinion). The circuit court noted that it had a duty to "prevent pretrial publicity from creating a 'carnival atmosphere,' which threatens the integrity of the proceeding." On January 8, 2021, the circuit court entered a second protective order that set forth a process by which any party producing discovery materials could mark such materials as confidential and that restricted access to and use of such confidential materials.

On March 2, 2021, Drummond moved to seal the record to prevent prejudicial pretrial publicity. In that motion, Drummond alleged that, in their February 18, 2021, interrogatory responses, the Robersons had falsely alleged that Drummond had bribed a prominent state official through campaign contributions. Drummond further alleged that, within 24 hours of the filing of the Robersons' interrogatory responses, an Internet blog had posted an article with the headline: "Testimony: Drummond's contributions to [a state official] were in exchange for opposition to EPA plans." Drummond further alleged that the Robersons'

counsel had a history of providing court filings from the underlying action to the Internet blog. Drummond also noted that that Internet blog had provided an online link to download the Robersons' interrogatory responses, but the downloadable PDF copy of the interrogatory responses was not obtained through Alacourt, Alabama's online public court-record database for trial courts, or from the Jefferson Circuit Clerk's office. Drummond further alleged that another Internet blog had posted an article quoting the Robersons' interrogatory responses; that the Robersons' counsel had a history of providing court filings to that blog as well; and that the referenced article had directly called for a settlement of the case.

Drummond also alleged that, the day after the Robersons submitted documents in discovery, an article appeared on the Internet demanding that Drummond face a federal probe of evidence tampering regarding the documents. Drummond also alleged that one of the Internet blogs had also posted an article claiming that Drummond and Alabama Power Company had tried to assassinate David Roberson while he was driving on Highway 280. Drummond requested that the circuit court seal the record to protect the integrity of the proceeding from such

6

prejudicial pretrial publicity. Drummond further requested a hearing to determine whether the Robersons or their counsel had violated the protective orders.

On March 19, 2021, the circuit court entered an order directing the clerk to seal the record and to mark the case as confidential. That order stated, in relevant part:

"In Open Court, counsel for the Plaintiff, Burt Newsome, Esquire, stated that he had NO OBJECTION to this case being marked as Confidential. After hearing and considering sworn testimony offered by the Plaintiff and Defendants, hearing and considering arguments of counsel and reviewing and considering the aforementioned documents, along with the Alabama Supreme Court's guidelines in Holland v. Eads, 614 So. 2d 1012 [(Ala. 1993)], this Court weighed the right of public access to judicial records with an individual's privacy interest. The Court finds that, notwithstanding the Plaintiff's 'no objection' to the Defendant's request and after a full review of the aforementioned testimony and documents at this Hearing, the Defendant has proved by clear and convincing evidence that the information contained in documents and presented through testimony promote scandal or defamation; pose a serious threat of harassment, exploitation, and/or physical intrusion to the Parties in this action; and pose the potential for harm to third persons not parties to this litigation. Accordingly, this Court finds it necessary to seal the entire record of this case, including discovery, before trial and during trial. The Court will re-evaluate this determination after trial. It is hereby ordered that the entire file in the above captioned case is sealed and marked as confidential. It is ordered that the Clerk of the Court is directed to ensure that the contents in this file are released

7

only to the counsel of record to the herein named Parties. It is ordered that counsel and Parties are prohibited from disclosing any contents, documents or information contained within this file to the public, without permission of this Court."

(Capitalization in original; emphasis omitted.)

On January 21, 2022, this Court released its opinion in Roberson I. Thereafter, on August 4, 2022, the circuit court dismissed the Robersons' indemnification claim and certified that dismissal as final under Rule 54(b), Ala. R. Civ. P. The Robersons appealed.

On April 6, 2023, while the Robersons' appeal in Roberson II was pending, EPI moved to intervene for the limited purpose of unsealing the record. EPI described itself as follows:

"EPI is a watchdog group that uses research to inform the public, the media, and policymakers on energy, utility, and other environmental issues. In particular, EPI investigates special interest influence on energy policy and its impacts on citizens and utility ratepayers. Informed by its investigative research, EPI provides insights on environmental policy to the public through online platforms and other channels. EPI publishes articles on its website, and its work is featured by local and national news outlets. In order to fulfill its mission, EPI uses public records from local, state, and federal agencies, including judicial records, to understand and report on policy issues that affect consumers and citizens."

8

In its motion, EPI cited numerous online articles, both on its own website and on AL.com, suggesting that Balch and Drummond have multiple connections to Alabama Power Company, Southern Company, and Matrix, LLC, and that those corporations also could have been involved in what EPI calls "the bribery scheme." EPI alleged that it "has been following the fallout of the bribery scheme and [David Roberson's] conviction and remains interested in the proceedings …." EPI argued that it was asserting the common-law right of the citizens of Alabama to inspect the records of judicial proceedings on behalf of the public and that the parties' interest in secrecy did not outweigh the public interest in disclosure under the factors set forth in Holland v. Eads, 614 So. 2d 1012 (Ala. 1993).

Alabama Media Group ("AMG"), the owner of AL.com, submitted an amicus curiae brief in support of EPI's motion. Drummond and Balch opposed the motion. The Robersons also submitted a brief in support of EPI's motion.

On July 17, 2023, after a hearing on EPI's motion, the circuit court entered an order denying EPI's motion. After summarizing the

9

proceedings on EPI's motion and the hearing on the motion, the court stated:

> "The Court takes judicial notice of the court file and read and considered the aforementioned filings, including an Order Granting Intervention by The Honorable Karen Owen Bowdre, in <u>United States of America v. Richard M. Scrushy</u>, Case Number CR-03-BE-0530-S, Entered October 19, 2004, provided to the Court by counsel for EPI[,] counsel Michael Yancey, Esquire. The Court heard and considered arguments from counsel.
>
> "This Court reiterated its primary function in presiding over this case, to wit: to ensure ALL Parties a fair trial and the ability to impanel an impartial jury. The Court further pointed out that this case is primarily an employee's dispute with his employer regarding how he was treated in light of certain alleged promises. The primary issue, in this Court's opinion, is an individual's employment issue, not a public-interest issue irrespective of what a Party may want it to be. While this Court arrived at a different conclusion, regarding unsealing certain documents, than the one reached by Judge Bowdre as set forth in her aforementioned Order and due to distinguishing factors from the above captioned case, this Court hereby adopts some fundamental principles as set forth in Judge Bowdre's aforementioned Order, as follows:
>
> > "'[This Court] recognizes the right of the press to intervene in certain circumstances to gain access to court proceedings and records. ... Balancing the rights of competing constituencies -- here the press, the general public, and the litigants -- requires continuing judicial vigilance and awareness, and occasional modifications of case management. ... If the document itself must be sealed to preserve the defendant's fair trial rights,

10

> allowing the media, and therefore the public, access to the substance of the document in a motion seeking its sealing would defeat the fundamental purpose for sealing the document in the first place. ...'"

(Capitalization in original.) After the circuit court reiterated the substance of its order sealing the record, it then stated:

> "This Court, after hearing arguments of counsel, is not swayed to reverse or modify the decision to seal the records in this case thus far. It is hereby ordered that [EPI's] Motion to Intervene for the Limited Purpose of Unsealing Court Records is denied, in its general and broad application. All of the records sealed thus far have been done so appropriately and in compliance with the guidelines set forth in Holland, supra.

> "The court file reflects that there are no pending motions. It is hereby ordered, without objection of any Party, that with any future filings, the Clerk of the Court is directed to file said Motions and their substance under seal and notify counsel for [EPI] of the fact of filing and type of motion filed, only. If EPI desires to pursue the unsealing of the respective motion, EPI can request a Hearing on same. Due to the sensitivity of this case as it relates to the personal lives of the Parties and the potential dissemination of inappropriate information in violation of the guidelines set forth in Holland, supra, the Court will review each such request to unseal a document on a motion-by-motion, hearing-by-hearing, and Order-by-Order, basis."

(Capitalization in original; emphasis omitted.) EPI appeals.

<u>II. Standard of Review</u>

11

We review the denial of a motion for permissive intervention to determine whether the circuit court exceeded its discretion. Jim Parker Bldg. Co. v. G & S Glass & Supply Co., 69 So. 3d 124, 129 (Ala. 2011).

### III. Analysis

This Court has held that "a motion to intervene is the procedurally correct means to seek the opening of a sealed court file." Holland, 614 So. 2d at 1014. Further, "a denial of permissive intervention is an appealable final order." Universal Underwriters Ins. Co. v. Anglen, 630 So. 2d 441, 442 (Ala. 1993).

In its brief, EPI asserts multiple arguments regarding why the circuit court erred in denying its motion to intervene. EPI primarily argues that the circuit court erred in concluding that the parties' interest in secrecy outweighed the public interest in disclosure and that it met is burden to intervene in the action for the purpose of obtaining access to judicial records in this case.

### Holland Factors

In Holland, supra, this Court summarized the public's general right to inspect judicial records:

> "It has long been the rule of this State to allow public inspection of judicial records. <u>Brewer v. Watson</u>, 61 Ala. 310, 311 (1878). More than a century ago, this Court held that '[a]n inspection of the records of judicial proceedings kept in the courts of the country, is held to be the right of any citizen.' <u>Id.</u> at 311; <u>see</u> <u>also</u> <u>Ex parte Balogun</u>, 516 So. 2d 606, 612 (Ala. 1987) (holding that 'the public generally has a right of reasonable inspection of <u>public records required by law to be kept</u>, except where inspection is merely out of curiosity or speculation or where it unduly interferes with the public official's ability to perform his duties'); <u>Excise Comm'n of Citronelle v. State ex rel. Skinner</u>, 179 Ala. 654, 657, 60 So. 812, 813 (1912). The public's right to inspect court records derives from the 'universal policy underlying the judicial systems of this country [that] secrecy in the exercise of judicial power ... is not tolerable or justifiable.' <u>Jackson v. Mobley</u>, 157 Ala. 408, 411-12, 47 So. 590, 592 (1908)."

614 So. 2d at 1014-15.

In <u>Holland</u>, the trial court sealed the record when the parties settled the case after the jury had returned a verdict, but the trial court had not yet entered a judgment on the verdict. Two years later, a third party moved to intervene in the case for the purpose of obtaining the trial transcript for use in a similar case against one of the same defendants. The trial court denied the motion to intervene. This Court affirmed. In doing so, this Court noted that the question whether the trial court had erred in sealing the record was not before us. Accordingly, we presumed that the trial court's original decision to seal the record was correct.

13

The only question before us was whether a third party may intervene to reopen a previously sealed record. We noted that this Court had not yet adopted a standard governing a trial court's ruling on a motion to intervene under such circumstances. After summarizing standards adopted by other courts, we adopted the standard set forth by the Court of Appeals for the District of Columbia in Mokhiber v. Davis, 537 A.2d 1100 (D.C. 1988). Under that standard, "the intervening party must produce evidence showing why the opponent's interest in secrecy is no longer sufficiently strong enough to outweigh the public interest in disclosure." Holland, 614 So. 2d at 1016. We then outlined four factors that trial courts should consider when ruling on a motion to intervene for the purpose of unsealing the record:

> "First, the court should examine the length of time that the intervenor knew or reasonably should have known of its interest in the case before petitioning to intervene. Second, the court should look at the prejudice to existing parties due to the intervenor's delay in petitioning to intervene. Third, the court should consider the prejudice that the intervenor would suffer if he were not allowed to have the record unsealed. Fourth, the court should consider the existence of any extraordinary circumstances suggesting, or cautioning against, intervention."

Id. at 1017.

14

As to this case, we initially note that the propriety of the circuit court's March 19, 2021, order sealing the record is not before us. Likewise, we do not opine on the specific merits of any yet unfiled motion to lift or modify the circuit court's order sealing the entire court file. Rather, the only question before us is whether the circuit court correctly denied EPI's motion to intervene for the purpose of asserting a public right of access to the case filings. In reviewing the circuit court's order denying that motion, we turn to the four factors set forth in Holland.

### 1. Timeliness

As noted above, the circuit court sealed the record on March 19, 2021. EPI moved to intervene on April 6, 2023. As the defendants note, EPI admitted in its motion to intervene that it knew about its interest in the case "since before it was sealed." Thus, EPI knew of its interest in the case at least two years before it moved to intervene. Holland, however, provides no rigid time limitation for intervention but, rather, includes time as one factor to be weighed in conjunction with the prejudice that delay in seeking intervention may cause the exiting parties. As one court has explained, "the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly

15

disrupting litigation, to the unfair detriment of the existing parties."

Roane v. Leonhart, 741 F.3d 147, 151 (D.C. Cir. 2014).

Furthermore, when evaluating timeliness, the specific type of claim for access is relevant. For example, when a public right of access to the sealed documents is claimed, the timeliness of the claim is weighed against the public interest in unsealing the records. In Mokhiber, supra, the case from which this Court adopted its standard for interventions to unseal records, an investigative reporter moved to intervene for the purpose of unsealing the record in a previously settled case one year after the reporter became aware of the case. The trial court ruled that the one-year delay was untimely. The Court of Appeals for the District of Columbia disagreed, holding that the one-year delay was not sufficient to warrant denial of the motion. The Mokhiber court reasoned:

> "[I]t is important to consider the specific kind of claim [the reporter] is making: he asserts a public right of access, that is, a right that any member of the public can assert. It would make little sense to deny [the reporter] intervention merely because he had known about the case for a single year, while allowing intervention, for example, by a college student who has just begun her senior thesis on the topic. Given the public character of the right, the court should not readily refuse intervention for reasons that do not apply generally to all members of the public. While there may well indeed be circumstances where a trial court, in the exercise of its

16

> discretion, will rightly conclude that untimeliness or other factors relating to the particular claimant justify refusal of intervention, we do not think that [a] one-year delay standing alone is sufficient to warrant such a refusal ...."

Mokhiber, 537 A.2d at 1105. See also Rosado v. Bridgeport Roman Catholic Diocese Corp., 276 Conn. 168, 228, 884 A.2d 981, 1015 (2005) (declining to place a rigid time limitation on intervention for the purpose of seeking, on public-interest grounds, to modify protective order sealing access to documents filed in withdrawn cases). Accordingly, we conclude that the timing of EPI's motion to intervene, in and of itself, was not a basis to deny its motion to intervene.

### 2. Prejudice to Existing Parties

The next factor to consider is "the prejudice to existing parties due to the intervenor's delay in petitioning to intervene." Holland, 614 So. 2d at 1017. In understanding this factor, Public Citizen v. Liggett Group, Inc., 858 F.2d 775 (1st Cir. 1988), another case cited approvingly by this Court in Holland, is instructive. In that case, the United States Circuit Court of Appeals for the First Circuit determined that a delayed motion to intervene did not prejudice the existing parties because the desired

17

intervention related only to an ancillary issue that would not disrupt the resolution of the underlying merits. The Public Citizen Court reasoned:

> "The second … factor to be considered is the prejudice to existing parties due to [the intervenor's] delay in intervening. … This factor encompasses the basic fairness notion that intervention should not work a 'last minute disruption of painstaking work by the parties and the court.' [Culbreath v. Dukakis, 630 F.2d 15, 22 (1st Cir. 1980).] For purposes of this factor, therefore, it is necessary to ask why a would-be intervenor seeks to participate, for if the desired intervention relates to an ancillary issue and will not disrupt the resolution of the underlying merits, untimely intervention is much less likely to prejudice the parties. Here, of course, [the intervenor's] motion pertains to a particularly discrete and ancillary issue, as demonstrated by the fact that the merits of the case have been already concluded and are no longer subject to review. Because [the intervenor] sought to litigate only the issue of the protective order, and not to reopen the merits, we find that its delayed intervention caused little prejudice to the existing parties in this case."

858 F.2d at 786.

The defendants argue that they will suffer prejudice related to EPI's delay in seeking intervention. Specifically, they contend that they relied on the order sealing the record and that, if the record is unsealed, they will have to review all the documents filed after the record was sealed to determine if they need to be redacted. The defendants claim that forcing them to review and potentially redact hundreds of filings will

subject them to a "monumental expenditure of … time and resources" that will disrupt the discovery process. Drummond's brief at 28.

However, the defendants also note that "almost the entire Court file -- from the entry of this Court's March 2021 Order to the present -- consists of various discovery disputes amongst the parties." Drummond's brief at 16. As the defendants correctly note, discovery materials are not typically considered to be matters of public record. For instance, the defendants quote the United States Court of Appeals for the Eleventh Circuit for the proposition that "'material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right.'" Drummond's brief at 19 (quoting <u>Chicago Tribune Co. v. Bridgestone/Firestone, Inc.</u>, 263 F.3d 1304, 1312 (11th Cir. 2001)) (emphasis omitted); <u>see also</u> <u>Mokhiber</u>, 537 A.2d at 1111 (concluding that there is no public right of access to discovery materials). Thus, to the extent that the court record is as represented by the defendants and accepting that EPI does not have a right of public access to pretrial-discovery matters, i.e., "almost the entire Court file," Drummond's brief

19

at 16, the sorting of discovery-related filings from the substantive filings appears to be the type of "discrete and ancillary issue" that is unlikely to unnecessarily disrupt the litigation. Public Citizen, 858 F.2d at 786. Accordingly, it does not appear that the defendants face any undue burden or prejudice owing to EPI's delay in intervening. Moreover, to the extent that EPI intends to seek a modification of the circuit court's protective order as it relates to prospective filings, the defendants are not prejudiced by any delay in EPI's intervention. Accordingly, the second factor does not weigh against permitting EPI to intervene.

### 3. Prejudice to the Intervenor

Next, EPI contends that the circuit court's denial of its motion to intervene resulted in prejudice to the public on whose behalf it sought to intervene. EPI contends that the public suffered prejudice from the denial of its motion to intervene because it was denied the public right of access to judicial records in a case of public interest. In response, the defendants again contend that the public right of access does not extend to discovery materials, which they assert are the only materials in the record that have not already been made publicly available. The defendants note that all nondiscovery materials have already been made

public in the records on appeal in <u>Roberson I</u> and <u>Roberson II</u>. In reply to that argument, EPI points out that other nondiscovery materials will eventually be filed in the case if it goes to trial and that, if the record is not unsealed, the public will be denied access to those materials.

EPI's argument on this factor is well-taken. Even accepting that the public has no right of access to discovery materials, the fact that the only nonpublic materials in the record are discovery materials does not mean that the public suffered no prejudice from the denial of EPI's motion to intervene. Nondiscovery materials will likely be filed if the case proceeds to trial. Further, the fact that the circuit court's order required the circuit clerk to notify EPI of the filing does not alleviate the prejudice to the public because, if EPI does not notify the public of the filing, the public will never know the filing exists. For these reasons, the third <u>Holland</u> factor weighs in favor of EPI's intervention to unseal the record on behalf of the public.

### 4. Extraordinary Circumstances

The fourth factor to consider is "the existence of any extraordinary circumstances suggesting, or cautioning against, intervention." <u>Holland</u>, 614 So. 2d at 1017. The only "extraordinary circumstance" cited by the

21

defendants as cautioning against intervention is the fact that some confidential discovery documents had previously been leaked to two Internet blogs in violation of the circuit court's protective order. However, even if various Internet blogs have been able to obtain confidential discovery material in violation of the circuit court's protective order, it is unclear how a blanket seal of the entire court file is tailored to meet that concern, particularly when weighed against the public's right to access nondiscovery materials in a case of public concern involving claims of bribery and environmental-protection issues. Accordingly, we do not agree that there are extraordinary circumstances weighing against intervention in this case.

## IV. Conclusion

This Court has recognized that there is a presumptive right of access to judicial documents and proceedings. Holland, 614 So. 2d at 1014-15. That right, however, is not absolute, and we do not recognize a presumptive right to public access to pretrial-discovery documents (or motions relating to the discovery process) in civil proceedings. See Mokhiber, 537 A.2d at 1110-12. Nevertheless, in this case, we conclude that EPI has at least met its burden to intervene for the purpose of

22

asserting a public right to access judicial documents and to seek a modification of the circuit court's blanket protective order sealing the case file. Accordingly, we conclude that the circuit court erred in denying EPI's motion to intervene, and we therefore reverse that order and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Stewart, J., and Lyons, Baschab, Welch, and Joiner, Special Justices,* concur.

Parker, C.J., dissents, with opinion, which Mendheim, J., joins.

Shaw, Wise, Bryan, Sellers, Mitchell, and Cook, JJ., recuse themselves.

---

*Because six members of the Supreme Court recused themselves, on August 5, 2024, Chief Justice Parker appointed retired Associate Justice Champ Lyons, Jr., and retired Judges Pamela Willis Baschab, Samuel Henry Welch, and J. Michael Joiner to serve as Special Justices in this appeal.

PARKER, Chief Justice (dissenting)

I dissent from the main opinion because I believe that, applying the four factors set forth in Holland v. Eads, 614 So. 2d 1012, 1017 (Ala. 1993), the Energy and Policy Institute ("EPI") has failed to demonstrate that the Jefferson Circuit Court exceeded its discretion in denying EPI's motion to intervene. As explained below, I would affirm the circuit court's judgment.

As noted in the main opinion, this Court has identified four factors that trial courts consider when determining whether to allow a third party to intervene for the purpose of unsealing the record. Those factors are as follows:

> "First, the court should examine the length of time that the intervenor knew or reasonably should have known of its interest in the case before petitioning to intervene. Second, the court should look at the prejudice to existing parties due to the intervenor's delay in petitioning to intervene. Third, the court should consider the prejudice that the intervenor would suffer if he were not allowed to have the record unsealed. Fourth, the court should consider the existence of any extraordinary circumstances suggesting, or cautioning against, intervention."

Holland, 614 So. 2d at 1017.

A. Timeliness

24

As stated in the main opinion, EPI admitted in its motion to intervene that it knew about its interest in the case "since before it was sealed." The circuit court sealed the record on March 19, 2021, but EPI did not move to intervene until April 6, 2023. Thus, at a minimum, EPI waited until two years after it knew of its interest in the case to move to unseal the record.

EPI does not argue that it was reasonable for it to wait two years before moving to intervene. Instead, EPI contends that, because it was asserting the right of access to judicial records on behalf of the public, its delay should not prevent its motion from being considered timely. In support of its argument, EPI relies on two cases from other jurisdictions. First, it relies on <u>Mokhiber v. Davis</u>, 537 A.2d 1100 (D.C. 1988). As noted in the main opinion, the trial court in <u>Mokhiber</u> ruled that an investigative reporter's one-year delay in moving to intervene after he became aware of the case and his interest in it caused his motion to be untimely. The Court of Appeals for the District of Columbia reversed, noting the public character of the right of access to judicial records:

> "[I]t is important to consider the specific kind of claim [the reporter] is making: he asserts a public right of access, that is, a right that any member of the public can assert. It would

25

> make little sense to deny [the reporter] intervention merely because he had known about the case for a single year, while allowing intervention, for example, by a college student who has just begun her senior thesis on the topic. Given the public character of the right, the court should not readily refuse intervention for reasons that do not apply generally to all members of the public."

Mokhiber, 537 A.2d at 1105.

EPI also relies on Rosado v. Bridgeport Roman Catholic Diocese Corp., 276 Conn. 168, 884 A.2d 981 (2005), in which the Connecticut Supreme Court held that the trial court had not erred in allowing newspapers to intervene to unseal records in withdrawn cases even though the newspapers had moved to intervene approximately one year after the cases had been withdrawn. The Rosado court recognized that one year is "not an insignificant period of time." 276 Conn. at 227, 884 A.2d at 1015. Nevertheless, it "decline[d] to place a rigid time limitation on intervention when, as in the present case, the sole purpose of the motion to intervene is to challenge a protective order. To conclude otherwise would be contrary to the important public interest that the motion seeks to vindicate." 276 Conn. at 228, 884 A.2d at 1015.

EPI further argues that, in opposing EPI's motion to intervene, Drummond Company, Inc., and Balch & Bingham, LLP ("the

26

defendants"), did not argue that there was no public right of access to nondiscovery judicial records and, thus, conceded that there was such a right. Finally, EPI notes that the circuit court did not find its motion untimely.

Initially, I note that EPI's argument relies on a case from the District of Columbia and a case from another state. Such decisions are merely persuasive authority; they are not binding. Fox v. Hunt, 619 So. 2d 1364, 1367 (Ala. 1993) ("The opinions of our sister states are merely persuasive authority, and this Court is not bound by the doctrine of stare decisis to follow such decisions."). I do not find the reasoning in Mokhiber and Rosado to be persuasive here. The fact that the right of access to judicial records is a public one has little relevance to the timeliness of the motion to intervene as contemplated in Holland. Under Holland, timeliness is measured from the time "that the intervenor knew or reasonably should have known of its interest in the case." 614 So. 2d at 1017. It is not measured from the time the record is sealed. If timeliness were measured purely from the time the record is sealed, then Mokhiber and Rosado might be correct that timeliness should not be a factor when a public right of access is involved. That is because each member of the

27

public's interest in the case might arise at a different time. But since Holland states that timeliness is to be measured from the time the intervenor knew or reasonably should have known of his interest, it seems to make little difference whether the right is public or not. Even a public right must be timely asserted. Cf. Citizens & Landowners Against the Miles City/New Underwood Powerline v. Secretary, United States Dep't of Energy, 683 F.2d 1171 (8th Cir. 1982) (holding that action by nonprofit and several landowners to block power line was barred by the doctrine of laches).

Further, Mokhiber's own reasoning undercuts itself. As noted above, the Mokhiber court reasoned that, "[g]iven the public character of the right, the court should not readily refuse intervention for reasons that do not apply generally to all members of the public." 537 A.2d at 1105. But Holland's timeliness requirement applies to any member of the public seeking to exercise the right of access to judicial records. Each member of the public seeking to intervene to unseal records must move to do so within a reasonable time after he knows or should know of his interest in the case. Accordingly, even under Mokhiber's reasoning, a

28

trial court may deny a motion to intervene for untimeliness even when a public right is being asserted.

As the defendants note, EPI essentially asks us to ignore <u>Holland</u>'s timeliness requirement in all cases involving a public right of access to judicial records. I am not inclined to ignore Alabama precedent on a ground found only in foreign decisions that I find unconvincing.

For these reasons, I do not believe that EPI has demonstrated that the first <u>Holland</u> factor weighs in favor of intervention to unseal the record.

## B. Prejudice to Existing Parties

Next, EPI contends that unsealing the record would not prejudice the parties. The only authority that EPI cites is <u>Public Citizen v. Liggett Group, Inc.</u>, 858 F.2d 775 (1st Cir. 1988). In that case, the United States Court of Appeals for the First Circuit held that a third party's delay in moving to intervene did not prejudice the existing parties when the case had been adjudicated on the merits. The <u>Public Citizen</u> court stated:

> "[The prejudice] factor encompasses the basic fairness notion that intervention should not work a 'last minute disruption of painstaking work by the parties and the court.' [<u>Culbreath v. Dukakis</u>, 630 F.2d 15, 22 (1st Cir. 1980).] For purposes of this factor, therefore, it is necessary to ask <u>why</u> a would-be

intervenor seeks to participate, for if the desired intervention relates to an ancillary issue and will not disrupt the resolution of the underlying merits, untimely intervention is much less likely to prejudice the parties. Here, of course, [the intervenor's] motion pertains to a particularly discrete and ancillary issue, as demonstrated by the fact that the merits of the case have been already concluded and are no longer subject to review. Because [the intervenor] sought to litigate only the issue of the protective order, and not to reopen the merits, we find that its delayed intervention caused little prejudice to the existing parties in this case."

858 F.2d at 786.

EPI selectively quotes from the above paragraph from Public Citizen in support of its contention that a motion to intervene for the purpose of unsealing a court record is a particularly discrete and ancillary issue that will not disrupt the resolution of the underlying merits. EPI's quotations from Public Citizen misleadingly indicate that Public Citizen stands for the proposition that such a motion to intervene is categorically an ancillary issue that will not prejudice the parties. But that is not what Public Citizen says. In Public Citizen, the issue of the protective order was found to be ancillary in light of the fact that the merits of the case had already been resolved. Here, by contrast, based on the record before us, the merits of the underlying litigation remain

30

pending. Even if <u>Public Citizen</u> were binding on this Court, it is easily distinguishable for this reason.

Moreover, EPI's argument frames the prejudice analysis as considering whether the parties will be prejudiced by the intervention itself. But <u>Holland</u>'s prejudice factor does not relate to the intervention itself. Rather, courts must determine whether the <u>delay</u> in moving to intervene is prejudicial to the parties. EPI does not directly address this issue. The defendants do address that issue by arguing that they relied on the order sealing the record and that, if the record is unsealed, they will have to review all the documents filed after the record was sealed to determine if they need to be redacted.

In response, EPI contends that, although the defendants alleged that they would be prejudiced by having to review all filings made after the record was sealed, the defendants did not identify any filings that would need to be reviewed. That argument misses the point that the defendants are making -- that the review process to identify which filings need to be redacted would require a monumental expenditure of time and resources.

In its reply brief, EPI contends that the review process would not be "as onerous as the [d]efendants pretend" because they were able to supplement the record with 544 pages of unredacted material from the previously sealed record. EPI's reply brief at 16-17. However, much of the supplemental record contains filings that pertain to the circuit court's protective orders and its order sealing the record. There is nothing to suggest that the defendants had to review that material before the addition of it in this proceeding to determine whether it contained sensitive information that would need to be redacted.

EPI further contends that, because the circuit court's order sealing the record indicated that the court would reconsider the order after the trial, unsealing the record now would not prejudice the parties beyond what could be required of them in the future. But that argument fails to recognize that the parties would no longer need to redact information in the record after trial. The reason the circuit court gave for sealing the record was to preserve the defendants' right to a fair trial. If the record were unsealed before trial, the parties would have to review it to determine what information needs to be redacted. If the record is unsealed after trial, then the parties may not need to redact information

32

because the risk of an unfair trial will be moot at that point. Accordingly, EPI's argument that its intervention would not prejudice the defendants because they will have to review the record anyway is unavailing.

Finally, EPI notes that, at the least, the blanket seal can be lifted only for future filings and that, if it is, prejudice can be avoided because the defendants can still move to seal individual documents. But doing so would likely require the circuit court to seal each document already in the record individually before unsealing the record as a whole. EPI does not demonstrate that, merely because it was possible for the circuit court to unseal the record to some degree without prejudice to the parties, its motion to intervene to unseal the record would not prejudice the parties.

For these reasons, EPI fails to demonstrate that the second Holland factor weighs in favor of intervention to unseal the record.

## C. Prejudice to the Intervenor

I agree with the main opinion that EPI demonstrates that the public's right of access to judicial records was prejudiced by the circuit court's denial of its motion to intervene. Nevertheless, prejudice to the intervenor is not dispositive; it must be weighed against other factors.

## D. Extraordinary Circumstances

Next, EPI contends that there are extraordinary circumstances that favor its intervention to unseal the record. EPI contends that it demonstrated that the record reflects "misconduct by multiple corporations and individuals, including an elected official," related to an important public-health issue. EPI's brief at 20. EPI relies on several cases in support of its argument.

First, EPI again cites Public Citizen, in which the United States Court of Appeals for the First Circuit held that there was a "strong public interest" in records containing research documents regarding the health risks of smoking because those documents concerned "an important public health issue." 858 F.2d at 787. As EPI notes, the present case is related to an alleged scheme by certain individuals and corporations to avoid responsibility for cleaning up polluted property, which would likely be considered a public-health issue. EPI cites Mokhiber for the proposition that "[a] claim to access is bolstered when the materials sought will shed light on events of historical or contemporary interest to a wider audience; an issue of greater and wider public importance may create a stronger claim of access than a less important issue." Mokhiber, 537 A.2d at 1117. EPI further cites Nixon v. Warner Communications,

34

Inc., 435 U.S. 589, 602 (1978), in which the United States Supreme Court considered "the incremental gain in public understanding of [the Watergate scandal]" in determining whether to release audio recordings of former President Richard Nixon's conversations. EPI also cites Rosado. There, the Connecticut Supreme Court noted that the intervenors' interest in the controversy "militates strongly in favor of intervention because the [intervenors] seek to vindicate the public interest in, and the presumptive right of access to, judicial proceedings and documents." Rosado, 276 Conn. at 228, 884 A.2d at 1015. Finally, EPI cites SRS Technologies, Inc. v. Physitron, Inc., 216 F.R.D. 525 (N.D. Ala. 2003), in which the plaintiff sought to modify a protective order to allow it to retain confidential discovery documents provided by the defendant after the case had been settled. In refusing to modify the protective order, the United States District Court for the Northern District of Alabama distinguished Public Citizen, supra, on the ground that in Public Citizen the intervenor had sought access for the benefit of the public, but in SRS Technologies the plaintiff sought to keep the discovery documents for its own benefit. EPI relies on that distinction, seeking to show that its

35

interest is more akin to that of the intervenor in <u>Public Citizen</u> than that of the intervenor in <u>SRS Technologies</u>.

Each of the cases EPI cites is either unhelpful, irrelevant, or distinguishable. First, <u>Nixon</u> does not support EPI's argument because in that case the United States Supreme Court did not attempt to weigh the public's interest in an event so historically important as the Watergate scandal against former President Nixon's arguments for keeping the audio recordings secret. The <u>Nixon</u> Court held that, because Congress had created an administrative procedure for releasing Presidential recordings in the Presidential Recordings Act, the common-law right of access to judicial records did not require release of the audio recordings. Thus, although the <u>Nixon</u> Court recognized in dicta that "the incremental gain in public understanding of an immensely important historical occurrence" was a consideration, <u>Nixon</u> provides no guidance for determining the weight to be given that consideration in determining whether disclosure is required. 435 U.S. at 602.

Two of the cases EPI cites, <u>Rosado</u> and <u>SRS Technologies</u>, are irrelevant to the extraordinary-circumstances factor. The propositions on which EPI relies in both cases focus on whether the intervenor sought to

36

assert the public's interest in the right of access to judicial proceedings. EPI does not identify any extraordinary circumstances in those cases that weighed in favor of intervention.

That leaves Public Citizen and Mokhiber, which recognized that the existence of a public-health issue and the existence of issues of historical or contemporary interest are circumstances that might weigh in favor of intervention. Both of those cases are distinguishable because, like Holland itself, each involved an intervenor who sought access to the record after the case had been settled. Here, by contrast, the case has not yet gone to trial. Here, the circuit court sealed the record to protect the defendants' right to a fair trial -- a circumstance that was not at issue in Public Citizen or Mokhiber. Accordingly, those cases do not support the proposition that the existence of a public-health issue or an issue of historical or contemporary importance outweighs the concern regarding a fair trial.

The main opinion does not address any of the cases on which EPI relies, and it cites no authority in support of its own conclusion on this factor. "Courts do not have the luxury of hiding behind ipse dixit assertions." Hicks v. State, 153 So. 3d 53, 84 (Ala. 2014) (Parker, J.,

concurring specially) (footnote omitted). In the absence of pertinent authority, I am reluctant to reverse the circuit court's order on a point that involves the exercise of judicial discretion.

For these reasons, although the third <u>Holland</u> factor does weigh in favor of intervention, I do not find that it weighs so heavily in favor of intervention that the circuit court exceeded its discretion in denying EPI's motion to intervene. Accordingly, I would affirm the circuit court's order denying EPI's motion.

Mendheim, J., concurs.